## A95A2367. WAGNER v. THE STATE.
### (467 SE2d 385)

BEASLEY, Chief Judge.

Wagner appeals his conviction of possession and sale of cocaine (OCGA § 16-13-30). The narcotics division of the Richmond County Sheriff's Department employed a confidential informant known as "Jeff" to introduce Deputy Tim Johnson, working undercover, to Wagner. Shortly thereafter, Wagner began procuring cocaine for Johnson. The transactions followed a predictable pattern: Johnson would approach Wagner, who would accompany him to a public telephone. Wagner would make a call, and Johnson would give money to Wagner. A drug dealer would drive to Wagner's location; Wagner would then exchange the money for cocaine and deliver it to Johnson.

Wagner testified, without dispute, that although he was a cocaine addict, he had been off drugs for six to seven months and was trying to stay "clean" and start a new life. "Jeff," whom he had known before, began hounding Wagner to find cocaine for him and "a friend" (Deputy Johnson) to purchase. "Jeff" told Wagner that "the friend" would give Wagner some of the cocaine for his efforts in procuring it for them. Wagner contends that in satisfying the persistent requests of Johnson for more cocaine, and Johnson in turn giving Wagner "a piece of it each time," he became hopelessly dependent on the drug again. After six transactions, Wagner was arrested during a "buy-bust" and was subsequently charged and found guilty by a jury. The transactions were audio- and videotaped by the police except, according to Wagner, for the first two encounters with "Jeff." "Jeff" was not a witness at trial.

Wagner admitted his involvement in the drug transactions but contends the evidence raised the issue of entrapment, which was his sole defense. He enumerates as error the trial court's refusal to give a pattern jury instruction on entrapment.

Three distinct elements embody the entrapment defense under OCGA § 16-3-25: (1) the idea for the commission of the crime must originate with the state agent; (2) the crime must be induced by the agent's undue persuasion, incitement, or deceit; and (3) the defendant must not be predisposed to commit the crime. *Keaton v. State*, 253 Ga. 70, 72 (316 SE2d 452) (1984); *Thomas v. State*, 134 Ga. App. 18,

22 (213 SE2d 129) (1975). If a defendant presents a prima facie case of entrapment, the burden shifts to the State to disprove entrapment beyond a reasonable doubt as one of the elements of the crime that must be proven. *Harpe v. State*, 134 Ga. App. 493, 495 (214 SE2d 738) (1975); *Hill v. State*, 261 Ga. 377 (405 SE2d 258) (1991).

" '(T)here is no entrapment where the officer merely furnishes an opportunity to a defendant who is ready to commit the offense.' [Cits.]" *Benefield v. State*, 140 Ga. App. 727 (2) (232 SE2d 89) (1976). Repeated requests by an officer or agent for illegal drugs from one who is known to have possessed them do not raise the defense of entrapment, even if he at first denies having them or a willingness to sell them. *Johnson v. State*, 147 Ga. App. 92, 93 (1) (248 SE2d 168) (1978); *Garrett v. State*, 133 Ga. App. 564, 566 (3) (211 SE2d 584) (1974).

The focus of the entrapment defense is the intent or predisposition of the defendant to commit the crime. *Johnson*, supra at 93 (1). " 'Because the concept of entrapment involves the predisposition of the accused, the question, like all fact questions, is generally one for the jury to decide.' [Cit.]" *Tolbert v. State*, 138 Ga. App. 724, 726 (1) (227 SE2d 416) (1976). Thus, evidence raising a defense of entrapment requires that the jury be charged as to the law of entrapment and the burden of proof thereon. *State v. Royal*, 247 Ga. 309, 310 (275 SE2d 646) (1981).

The facts in this case substantially track those in *Sherman v. United States*, 356 U. S. 369 (78 SC 819, 2 LE2d 848) (1958). Evidence at Sherman's trial showed that drug sales to the government informer were brought about by the informer's persistent solicitation in the face of obvious reluctance on the part of Sherman, whom the informer knew was undergoing treatment for addiction. The informer played on Sherman's sympathy based on mutual experiences with addiction and suffering withdrawals. The United States Supreme Court wrote, "The function of law enforcement is the prevention of crime and the apprehension of criminals. Manifestly, that function does not include the manufacturing of crime. . . . To determine whether entrapment has been established, a line must be drawn between the trap for the unwary innocent and the trap for the unwary criminal. . . . [In this case,] one request [of Sherman] was not enough, for [the informer] tells us that additional ones were necessary to overcome, first, [Sherman's] refusal, then his evasiveness, and then his hesitancy in order to achieve capitulation. [The informer] not only procured a source of narcotics but apparently also induced [Sherman] to return to the habit. Finally, assured of a catch, [the informer] informed the authorities so that they could close the net." Id. at 372-373.

The State was on notice through its agent that Wagner was try-

ing to maintain a lifestyle free of drugs. As an abstaining addict, he was vulnerable to enticement, and a jury should have been allowed to determine if the police used this information to exploit and entrap him. "[T]he theory of the entrapment defense . . . is to deter government conduct that entices innocent persons to break the law." *Keaton v. State*, 253 Ga. 70, 71 (316 SE2d 452) (1984).

The State cites portions of the taped conversations that indicate Wagner's eagerness to take part in the drug deals and thus his predisposition to commit the criminal acts. The critical time was the point at which Wagner was initially contacted by the confidential informant when, according to Wagner, he was trying to overcome his drug addiction. He acknowledges that he readily and willingly took part in the drug transactions subsequent to resuming use after being offered cocaine by "Jeff" while upset over a domestic quarrel. However, "[i]f the 'creative activity,' [*Sherman*, supra at 372], of the law-enforcement official generates criminal acts that are 'not independent acts subsequent to the inducement but part of a course of conduct which was the product of the inducement,' id. at 374, those [subsequent] acts cannot be used to show predisposition." *Hill v. State*, 261 Ga. 377 (405 SE2d 258) (1991).

The Supreme Court in *Sherman* held that the defense of entrapment was established as a matter of law in that case. Wagner was at least entitled to a jury charge on the subject, because a jury could find that this case "illustrates an evil which the defense of entrapment is designed to overcome. The government informer entices someone attempting to avoid narcotics not only into carrying out an illegal sale but also into returning to the habit of use. Selecting the proper time, the informer then tells the government agent. The setup is accepted by the agent without even a question as to the manner in which the informer encountered the seller. Thus the Government plays on the weaknesses of an innocent party and beguiles him into committing crimes which he otherwise would not have attempted. Law enforcement does not require methods such as this." *Sherman*, supra at 376.

The evidence would support a finding that, with the knowledge that what they were doing was "wrong" and that they were "using him," law enforcement officials fed Wagner's habit in an effort to guarantee his continued cooperation, which resulted in the arrest of the two drug dealers who supplied the cocaine. A triable issue was made as to whether the State's informant created the criminal design by undue persuasion, incitement and deceitful means. "The agent's conduct is to be viewed objectively, and evaluated by the jury in light of the standard of conduct exercised by reasonable persons generally. See LaFave and Scott, Criminal Law, § 48, at p. 371 (1972)." *Keaton*, supra.

The court not only refused to charge on entrapment but

threatened to cite defense counsel for contempt if it were even mentioned. In addition, on relevancy grounds, the court vehemently limited Wagner's narrative testimony about having been off drugs until his encounters with "Jeff." Although the jury was permitted to hear limited testimony regarding Wagner's resumption of use through the prompting of the informer, it was not instructed on the law of entrapment so as to know how to evaluate the evidence in light of the law.

" 'Where there is only one defense on which a party relies, failure to instruct the jury as to the evidence supporting this defense, so specifically that the jury will not only be required to pass upon it, but will be enabled to do so intelligently, under pertinent rules of law and evidence, withdraws that defense from the jury, and to that extent prejudices the defendant's right to a fair and impartial trial. . . .' [Cit.]" *Tolbert*, supra at 726 (1).

The court erred and a new trial is required.

*Judgment reversed and case remanded. Pope, P. J., and Ruffin, J., concur.*

DECIDED FEBRUARY 5, 1996.

*Peter D. Johnson*, for appellant.
*Daniel J. Craig, District Attorney, Charles R. Sheppard, Assistant District Attorney*, for appellee.