A98A0477. DUNCAN v. THE STATE.
(500 SE2d 603)

ELDRIDGE, Judge.

The defendant, David Pirie Duncan, challenges his convictions on two counts of aggravated child molestation. We affirm the convictions.

The defendant and his wife adopted two boys, ages four and six, in 1987. At trial, the older child testified that, beginning in the summer of 1993, the defendant regularly punished him and his younger brother by forcing them to perform oral sex on the defendant. The child testified that he initially was afraid to tell anyone about the abuse, but after several episodes, he decided to tell his friend because he was "sick and tired of it."

In October 1993, he told his teacher that he needed to see the school counselor; the teacher testified that the child's request sounded "urgent." The school counselor met with the child and testified at trial that he seemed upset and embarrassed. She testified that he was hesitant to tell her what was wrong, so she suggested that he write down whatever was bothering him. The child then wrote a note that said, in part, the following: "My Dad makes me suck his Dick. He also does it to [the younger child]. . . ." The note also said that the only two people who knew of the abuse were the younger child and their friend, J. R. The counselor testified that the child seemed "relieved" after writing the note.

The counselor immediately contacted the Georgia Department of Family & Children Services ("DFCS"). The next morning, a Cobb County police detective, Officer Sandra Pope, and a DFCS child

abuse investigator, Rose Parker, interviewed both children at school.[1]

During the interviews and at trial, both boys gave similar accounts of the incidents of molestation. The older child said that he and his younger brother stayed at home alone during the summer of 1993 while both parents were at work. Both children said that their father, the defendant, would sometimes come home from work early and would punish the boys for various misdeeds by forcing them to perform oral sex on the father's penis. The older child stated that his father would sometimes ejaculate into his mouth. The older child testified that the defendant threatened the children that if they told anyone, he would go to jail and receive "three square meals a day," while the children would be worse off because there would not be much money for the family to live on. He also testified that he did not report the abuse immediately because he was "scared," but that he finally told his best friend because he was "sick and tired of it."

Following the interviews by Officer Pope and Parker, it was determined that the boys were at risk of further abuse, and they were removed from the defendant's home. Sandra Duncan, the defendant's wife, was contacted and interviewed by Parker. Based upon the investigation, Officer Pope secured a warrant for the defendant's arrest, and he was arrested and charged with three counts of aggravated child molestation.

A jury trial was held in January 1996, and the jury found the defendant guilty on two counts of aggravated child molestation, one count as to each of the boys. The defendant's motion for a new trial was denied, following a hearing on March 10, 1997. This appeal followed. *Held*:

1. In his first enumeration of error, the defendant asserts that the trial court erred in permitting the State to question the defendant's wife concerning their lack of sexual relations. The defendant claims that such testimony is protected by the spousal privilege, OCGA § 24-9-21 (1). See also *White v. State*, 211 Ga. App. 694 (440 SE2d 68) (1994). While the defendant is correct that testimony regarding sexual relationships between spouses generally is protected by the spousal privilege as a matter of public policy, a spouse may waive his or her privilege by voluntarily taking the stand and testifying. Id. at 696. In this case, Mrs. Duncan expressly waived her spousal privilege, stating that "[w]e have nothing to hide."

Further, although the defendant claims on appeal that *his* spousal privilege should have excluded the testimony, the defendant affirmatively stated at trial that he was not going to exercise his

---

[1] Officer Pope used a tape recorder to record the interviews, but it malfunctioned and produced no recording. However, Parker took detailed notes during the interview, which were later relied upon by Officer Pope in writing her investigative report.

spousal privilege.[2] The only objection to Mrs. Duncan's testimony was the defendant's assertion that it was irrelevant. Subsequent to this objection, both the State and the defendant questioned Mrs. Duncan about the couple's sexual practices without further objection. Accordingly, this enumeration is without merit.

2. In his second enumeration, the defendant asserts that the evidence was insufficient for a rational trier of fact to find him guilty beyond a reasonable doubt of aggravated child molestation. Under OCGA § 16-6-4 (a), "[a] person commits the offense of child molestation when he does any immoral or indecent act to or in the presence of or with any child under the age of 14 years with the intent to arouse or satisfy the sexual desires of either the child or the person." Further, under OCGA § 16-6-4 (c), "[a] person commits the offense of aggravated child molestation when he commits an offense of child molestation which act physically injures the child or involves an act of sodomy." Sodomy is defined as a "sexual act involving the sex organs of one person and the mouth or anus of another." OCGA § 16-6-2 (a).

The evidence presented at trial included the victims' testimony that the defendant punished them by forcing them to perform oral sodomy on him during the summer of 1993, when both victims were under the age of 14. While the defendant points to minor discrepancies in the victims' testimony, such discrepancies go to the weight, not the sufficiency, of the evidence. OCGA § 24-9-5 (b); *Nunn v. State*, 224 Ga. App. 312 (480 SE2d 614) (1997); *Jones v. State*, 220 Ga. App. 236 (469 SE2d 379) (1996); *Webster v. State*, 185 Ga. App. 709 (365 SE2d 530) (1988).

The evidence also showed that both victims subsequently told a mutual friend about the abuse; the friend, who had not seen the victims since the children were removed from the defendant's home in October 1993, corroborated the victims' testimony at trial. The older victim also made an outcry to the school counselor, who notified law enforcement and DFCS officials. Although there was testimony that the interview of the victims by these officials was not conducted in strict compliance with Cobb County Child Abuse Investigation Protocol, such protocol is clearly directory, not mandatory.[3] Further, once

---

[2] Even so, we note that the right to assert the marital privilege belongs to the witness, not the accused. OCGA § 24-9-23 (a); *Chancey v. State*, 256 Ga. 415, 437 (349 SE2d 717) (1986), cert. denied, 481 U. S. 1029 (107 SC 1954, 95 LE2d 527) (1987). But see *White v. State*, supra at 696.

[3] The protocol states, in relevant part, as follows: "Basic Child Abuse Investigative Procedures. 1. The first interview should be basic[,] collecting only the information needed to determine if the child is in danger or if a crime has occurred. It is not mandatory that this interview be recorded but good notes should be kept. . . . 2. The investigating officer and a [DFCS] worker in joint cases should conduct a second interview. If possible this interview

the trial court determines that the officials' testimony is sufficiently reliable, any failure to follow established protocol goes to the credibility of the witnesses, not the admissibility of the witnesses' testimony. OCGA § 24-3-16 (the Child Hearsay Rule); *Knight v. State*, 210 Ga. App. 228 (435 SE2d 682) (1993); *Gregg v. State*, 201 Ga. App. 238 (411 SE2d 65) (1991).

After carefully considering the record in the light most favorable to the verdict, we find that the evidence is sufficient beyond any reasonable doubt to enable a rational trier of fact to convict the defendant of two counts of aggravated child molestation. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Chastain v. State*, 180 Ga. App. 312 (349 SE2d 6) (1986).

3. In his third enumeration of error, the defendant complains that the trial court erred in excluding his expert witness from testifying regarding various psychological principles, including projection and pay back. However, the defendant did not object at trial to the court's limitation on this testimony, responding that "I'm not going into the particulars of the case. I do not intend to do that." Accordingly, there was no error.

Pretermitting whether or not the defendant waived any objection to the trial court's exclusion of this testimony, we note that there was *no admissible evidence* that supported the introduction of testimony regarding projection and pay back. See Division 5, infra. Further, the defendant's expert witness did not interview the victims in this case, but relied instead upon inadmissible hearsay in reaching his opinions. Compare *State v. Butler*, 256 Ga. 448, 449-450 (349 SE2d 684) (1986) (the State's expert witness was a pediatrician who questioned and examined the seven-year-old victim, and who concluded that the child had been sexually abused).

Moreover, the defendant was not precluded from questioning his expert witness regarding these principles, i.e., whether children make false allegations about sexual abuse and the possible reasons for this behavior. He *was* prevented from exploring how these principles specifically applied to this case, i.e., eliciting an opinion as to whether or not the victims' allegations in this case were a *result* of projection or pay back. During the trial, the defendant proffered the expert's testimony that recited, in detail, various inadmissible assertions regarding alleged prior abuse of the victims by unidentified third parties which led the expert to conclude that the victims' allegations of sexual abuse by the defendant were the result of projection and pay back and, thus, were not credible.

should be audio or video taped. The interview should be very detailed to establish all the facts in the case."

However, determination of issues of witness credibility are reserved exclusively for the jury. OCGA § 24-9-80. "[A]n expert may not testify as to his opinion as to the existence *vel non* of a fact unless the inference to be drawn from facts in evidence is beyond the ken of the jurors — that is, unless the jurors, for want of specialized knowledge, skill, or experience, are incapable of drawing — from facts in evidence — such an inference for themselves. In the present case, the truthfulness or credibility of the victim[s] was not beyond the ken of the jurors." (Citations and punctuation omitted; emphasis in original.) *Smith v. State*, 259 Ga. 135, 138 (377 SE2d 158) (1989). See also *Allison v. State*, 256 Ga. 851, 853 (353 SE2d 805) (1987); *Smith v. State*, 247 Ga. 612, 619 (277 SE2d 678) (1981). The jury heard testimony from the victims, as well as evidence about the children's mental, emotional, and intellectual status; their descriptions of the abuse; their outcries to the school counselor; and the subsequent investigative interviews. Expert opinion testimony was not required to assist the jury in determining whether or not the children were truthful in their reports of abuse, particularly when such opinion was based upon inadmissible hearsay. As such, the expert's conclusion that the children in this case had fabricated their reports as a result of projection or pay back was properly excluded. See *United States v. Azure*, 801 F2d 336, 340-341 (8th Cir. 1986) (holding that "putting an impressively qualified expert's stamp of truthfulness on a witness' story goes too far" and may lead the jury to " '[surrender] their own common sense in weighing testimony' "); *United States v. Barnard*, 490 F2d 907, 912 (9th Cir. 1973); *Smith v. State*, 259 Ga. at 138; *Allison v. State*, 256 Ga. at 853.

4. In his fourth enumeration of error, the defendant asserts that the trial court erred in excluding his expert witness from testifying regarding the results of his psychological testing of the defendant. The defendant claimed at trial that the evidence "supports our contention that [the defendant] did not do these acts." Further, he complains in his appellate brief that such evidence showed that he did not have the characteristics of a pedophile.

However, "[t]here is *no* authority for the admission of an expert opinion that the *defendant* who is on trial for sex crimes against a child *is or is not* a pedophile. . . . The profile testimony sought to be introduced by [the defendant] goes to the credibility and believability of [his] own testimony that he did not commit the acts charged and further speaks to the ultimate fact of whether [he] committed those acts. From the extensive testimony and cross-examination of the various witnesses at trial, the jury, without the help of expert opinion, could have determined the credibility and truthfulness of all the witnesses and could have formed independent opinions as to the victim's truthfulness and the [defendant's] capability of performing the

acts he was accused of. These determinations did not involve unique and mysterious areas of human response necessitating expert testimony." (Citations and punctuation omitted; emphasis in original.) *Knight v. State*, 206 Ga. App. 529, 530 (426 SE2d 1) (1992). There was no error in excluding this testimony, because such testimony invades the province of the jury as to the ultimate issue, i.e., the defendant's guilt or innocence.

The defendant also asserts that, since the State was allowed to elicit testimony from his wife that they had stopped having sexual intercourse at the approximate time of the victims' sexual abuse, he should have been able to present the expert's opinion that the frequency of his sexual relations with his wife was within "normal" limits. However, the expert stated in proffered testimony that "[t]here is a tremendous latitude of what is normal in terms of how often people have sexual intercourse with each other. There is no one expected standard. . . . There is a wide variety of what is normal." The defendant subsequently was allowed to question the expert in front of the jury as to whether there was a standard for evaluating the frequency of sexual relations between married adults, and the expert's response was consistent with his proffered testimony. Accordingly, there was no error.

5. In his final enumeration of error, the defendant asserts that the trial court violated his constitutional right to confront the victims/witnesses by preventing him from cross-examining them regarding their prior actions that would show their bias and prejudice. We disagree.

The trial court granted the State's motion in limine to exclude any evidence of alleged past sexual acts by the victims or acts of child molestation directed toward the victims by any person other than the defendant. The trial court also excluded impeachment evidence of specific bad acts by the children under OCGA § 24-9-84.

The defendant asserts that he should have been allowed to cross-examine the victims about alleged prior bad acts, including his assertion that they had stolen the defendant's calculator and set fire to their grandmother's house. The defendant asserted that the victims made their allegations of sexual abuse after being punished by the defendant for these incidents, and that he should be allowed to present this evidence to expose the victims' "possible biases, prejudices or ulterior motives" against the defendant. However, such "bad act" impeachment evidence is inadmissible under OCGA § 24-9-84. *Heaton v. State*, 214 Ga. App. 460, 461 (448 SE2d 49) (1994); see also *Evans v. State*, 180 Ga. App. 1, 2 (348 SE2d 561) (1986). Further, even though evidence as to a witness' motives in testifying may be relevant in attacking the credibility of the witness, there is nothing to indicate in this case that the witnesses were benefiting in any way

from their cooperation with the State. *"What counts is whether the witness[es] may be shading [their] testimony in an effort to please the prosecution."* (Citations and punctuation omitted; emphasis in original.) *Owens v. State*, 251 Ga. 313, 316 (305 SE2d 102) (1983). There was no error.

The defendant also asserts that he should have been allowed to present evidence as to prior molestation of the victims by unidentified third parties and of sexual acts by the victims toward other children. However, the fact that the child was previously molested by someone other than the defendant has no relevance as to whether the defendant committed the crime for which he is charged. *Chastain v. State*, supra at 312. "[E]vidence of prior molestation or previous sexual activity on the part of the victim is not relevant in a child molestation case to show either the victim's reputation for nonchastity or [his] preoccupation with sex. [Cit.]" *Hall v. State*, 196 Ga. App. 523, 525 (396 SE2d 271) (1990). See also OCGA § 24-2-3 (a) (the Rape Shield Statute); *Phillips v. State*, 196 Ga. App. 267, 268 (396 SE2d 57) (1990) (holding that the Rape Shield Statute "supersedes all evidentiary exceptions"); *Johnson v. State*, 146 Ga. App. 277, 280 (246 SE2d 363) (1978).

However, in *Hall v. State*, 196 Ga. App. at 524, this Court held that, when the State has presented evidence that indicates that the victims are suffering from child sexual abuse accommodation syndrome, evidence of molestation by third parties may be necessary "to prevent the jury from reaching the unwarranted conclusion that the *only possible explanation* for the medical findings and the existence of behavior consistent with the . . . syndrome was that the victim had been molested by appellant." (Emphasis supplied.) Id. at 525. No such danger existed here, as the State did not assert that the children suffered from such syndrome and no medical evidence of molestation was presented. Instead, the State relied on the victims' own testimony regarding the molestation and the corroborating testimony of school officials, law enforcement personnel, and DFCS investigators, as well as the victims' mother, in proving that the defendant forced the victims to perform oral sodomy. There was no error.

*Judgment affirmed. McMurray, P. J., and Blackburn, J., concur.*

DECIDED MARCH 30, 1998 —
RECONSIDERATION DENIED APRIL 10, 1998.

*Gregory A. Hicks, James K. Luttrell*, for appellant.

*Thomas J. Charron, District Attorney, Debra H. Bernes, Michael S. Moody, Assistant District Attorneys*, for appellee.