## A10A1704. SMITH v. THE STATE.

(702 SE2d 211)

ANDREWS, Presiding Judge.

On appeal from his conviction for attempted child molestation and other crimes, Marvin Smith argues inter alia that the evidence was insufficient and that the State's peremptory strikes deprived him of a fair trial under *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986). We find that the evidence against Smith was sufficient to sustain his conviction. However, because Smith made out a prima facie case of discrimination by reason of the State's strikes of two African-American veniremen resulting in the total exclusion of African-Americans from the jury, and because the trial court did not authorize the State to refute Smith's prima facie case with race-neutral explanations of the strikes, we vacate that portion of the trial court's order concerning Smith's *Batson* challenge and remand for further proceedings.

"On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, with the defendant no longer enjoying a presumption of innocence." *Reese v. State*, 270 Ga. App. 522, 523 (607 SE2d 165) (2004). We neither weigh the evidence nor judge the credibility of witnesses, but determine only whether, after viewing the evidence in the light most favorable to the prosecution, a "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979).

So viewed, the record shows that on July 15, 2006, a volunteer associated with a citizens' group and acting in concert with police received an online message from Smith and told him that she was 15 years old. Smith, who is African-American and was 35 years old at the time, sent pictures of himself to the woman. As their conversations continued over the next twelve days, the two discussed the sexual acts that might take place if they met, and Smith directed her to pornography sites showing African-American men having sex with white women. Smith acted throughout under the assumption that the woman was a girl of 15, telling her that "I could get in lots of trouble," "I could go to jail," and that he had been with girls as young as 14 in the past. After 12 days of conversations, the woman gave Smith her address. Smith drove to her house in the Nissan Altima he had named to the woman as his car. When police identified themselves there, Smith fled before being apprehended.

Before trial, Smith moved to change venue, arguing that television and newspaper coverage of the events at issue made a fair trial impossible. The trial court granted the motion and directed the parties to negotiate on an appropriate venue for trial. After denying the State's motion for reconsideration, the trial court ordered the

case transferred to Whitfield County. A jury found Smith guilty of attempted child molestation, attempted enticement of a child for indecent purposes, and obstruction. The trial court entered judgment on the verdict and sentenced Smith to 25 years with 13 to serve. Smith's motion for new trial was denied.

1. The evidence outlined above, including Smith's engaging in sexually explicit conversations, driving to an arranged meeting place, and fleeing from officers there, was sufficient to sustain Smith's conviction. See OCGA §§ 16-4-1 (defining criminal attempt), 16-6-4 (defining child molestation), 16-6-5 (defining enticement of a child for indecent purposes), 16-10-24 (defining obstruction of a law enforcement officer); see also *Dennard v. State*, 243 Ga. App. 868, 870-871 (1) (534 SE2d 182) (2000) (denying general demurrer to indictment charging defendant with attempted child molestation where he conducted internet conversations with a decoy and appeared at an appointed meeting place, thus taking a "substantial step" toward the crime).

2. Smith argues that the State's peremptory strikes of two African-Americans from the venire, resulting in an all-white jury, deprived him of a fair trial.

The transcript of voir dire shows that the venire in this case consisted of fifty-seven whites and three African-Americans, such that it was approximately five percent African-American. Immediately after examination of the first African-American venireman, the State indicated its intention of removing him for being less than forthcoming about his criminal history, which included an armed robbery charge. When the State struck this first African-American venireman, Smith did not object. The State did not raise any objection to the second African-American venireman immediately after his examination, but later struck him nonetheless. Smith objected to this strike, which was made when no veniremen were present. The State thus used two of its six peremptory strikes, or thirty-three percent of such strikes, on the two African-Americans reached from the venire before the completion of the panel. Citing *Copeland v. State*, 281 Ga. App. 11 (635 SE2d 283) (2006), the trial court held that because no prima facie case of discrimination was made out, no further proceedings on Smith's challenge to the second venireman were necessary.

To establish a prima facie case of discrimination,

> the defendant first must show that he is a member of a cognizable racial group, and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant is entitled to rely on the fact, as to which there can be no

dispute, that peremptory challenges constitute a jury selection practice that permits those to discriminate who are of a mind to discriminate. Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race.

(Citations and punctuation omitted.) *Batson*, supra, 476 U. S. at 96 (III) (C). It is true that " 'numbers alone may not establish a disproportionate exercise of strikes sufficient to raise a prima facie inference that [a party's] strikes were exercised with discriminatory intent.' " *Mitchell v. State*, 275 Ga. 42, 45 (5) (561 SE2d 803) (2002), quoting *Livingston v. State*, 271 Ga. 714, 718 (2) (524 SE2d 222) (1999). But it is also true that

[a] defendant can establish a prima facie case of purposeful discrimination in selection of the petit jury *on evidence that the prosecutor struck all black members of the venire.* Once the defense makes this prima facie showing, the burden shifts to the State to come forward with a race-neutral explanation for challenging black jurors.

(Citations omitted; emphasis supplied.) *Glanton v. State*, 189 Ga. App. 505, 506 (2) (376 SE2d 386) (1988).

The State's use of two peremptory strikes against the two African-Americans reached in the course of voir dire amounted to a twenty-eight point differential between the percentage of African-Americans in the venire (five percent) and the percentage of the State's total strikes used against African-Americans (thirty-three percent). Pretermitting whether this differential was sufficient in itself to make out a prima facie case, these strikes resulted in the "total exclusion" of African-Americans from the jury and thus established a prima facie case of racial discrimination. *LeMon v. State*, 290 Ga. App. 527, 529 (1) (a) (660 SE2d 11) (2008) (three of nine strikes resulting in the exclusion of three African-Americans making up twelve percent of a venire, and in the "total exclusion" of that group from the jury, made out a prima facie case); *Dixon v. State*, 303 Ga. App. 517, 523 (4) (693 SE2d 900) (2010) (use of strikes to exclude "the only four black females" in the venire made out a prima facie case); *Griffeth v. State*, 224 Ga. App. 462, 464-465 (2) (480 SE2d 889) (1997) (three of six strikes against African-Americans making up twenty percent of a venire made out a prima facie case); *Staples v. State*, 209 Ga. App. 802 (1) (434 SE2d 757) (1993) (five of nine strikes against African-Americans making up nineteen percent of a venire made out a prima facie case). Compare *Mitchell*, 275 Ga. at 45

(5) (in the absence of any other facts tending to show a pattern of discrimination, four strikes against African-Americans did not make out a prima facie case); *Copeland*, 281 Ga. App. at 12-13 (1) (where venire was seventeen percent and jury thirty-eight percent African-American, defendant did not make out a prima facie case).

When the trial court erroneously concluded that no prima facie case had been made out, it then held it unnecessary to inquire as to any race-neutral rationale for the disputed strike. Even if there were "some evidence of a neutral basis for some of the state's peremptory strikes . . . , we must remand the case for an evidentiary hearing and trial decision." *Powell v. State*, 182 Ga. App. 123, 124 (2) (355 SE2d 72) (1987). "One of the reasons is that the determination ordinarily must be made in the first instance by the trial court, which is much more aware than we are of the circumstances and the significance of factors bearing on the subtle issue of neutrality; it is properly the factfinder." Id. The second is, as we have already explained, that "this is not a case where the issue may be decided as a matter of law one way or the other on the basis of what is in the record" because Smith's making out of a prima facie case under our case law demands the second and third stages of a *Batson* analysis. Id.

On remand, "[t]he question is whether the state exercised *any* of its strikes for a racially discriminatory reason, for if it did, the rule of *Batson* was violated." (Emphasis in original.) *Powell*, 182 Ga. App. at 124 (2). If, given our conclusion that the facts establish a prima facie case of purposeful discrimination, "the prosecutor does not come forward with a neutral explanation for his action, the conviction must be set aside." (Citation and punctuation omitted.) *Wright v. State*, 186 Ga. App. 104, 105-106 (366 SE2d 420) (1988) (remanding for further proceedings).

3. In light of the above, we reserve ruling on Smith's other arguments for any appeal taken from the trial court's disposition of the case on remand.

*Judgment affirmed in part and vacated in part, and case remanded with direction. Ellington and Doyle, JJ., concur.*

DECIDED OCTOBER 1, 2010.

*Jones, Osteen & Jones, Linnie L. Darden III*, for appellant.
*Julia Fessenden Slater, District Attorney, Jennifer E. Dunlap, Assistant District Attorney*, for appellee.