**FOURTH DIVISION**
**DOYLE, P. J.,**
**MCFADDEN and BOGGS, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed. (Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008) http://www.gaappeals.us/rules/

**May 20, 2013**

# In the Court of Appeals of Georgia

A13A0408. BROWN v. THE STATE.

MCFADDEN, Judge.

After a bench trial, Anthony Scott Brown was convicted of criminal attempt to commit child molestation, OCGA §§ 16-4-1, 16-6-4 (a) (1), and computer child exploitation, OCGA § 16-12-100.2 (d) (1). He appeals. Because we find that the evidence was sufficient, that the state had jurisdiction to prosecute Brown for these offenses, and that the offenses did not merge for sentencing, we affirm.

1. *Sufficiency of the evidence.*

Brown argues that the evidence was insufficient to support his conviction for attempted child molestation. When a defendant challenges the sufficiency of the evidence supporting his criminal conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier

of fact could have found the essential elements of the crime beyond a reasonable doubt." (Citation omitted; emphasis in original.) *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979).

So viewed, the evidence showed that on June 3, 2009, a Whitfield County, Georgia, sheriff's deputy posted a "Craigslist" advertisement in which he purported to be "Brittany," a female looking for male companionship. Brown, a 26-year-old Tennessee resident, responded to the advertisement. The two began communicating, first by email and then by Internet instant messages. In a June 7 email, "Brittany" told Brown that she was only 14 years old. Brown then asked what she had in mind, and "Brittany" gave a vague response. Brown then responded: "ah, i see i see, so your looking for someone to basicly, take your virginity, and show you the world of such pleasures, well i supose i could help you with that, if your interested."[1] In a subsequent email on June 7, Brown asked "Brittany" what she was "interested in learning." In her reply, "Brittany" mentioned that she lived in north Georgia. In his next email, Brown asked "Brittany" if she was "looking forward to high school" and then stated:

---

[1] We have quoted Brown's statements exactly as they appear in the emails and instant messages, including any spelling or other errors.

2

i could teach you everything if you like, but only if you feel comftable enough to learn, and don't worry i know your not some sort of a nasty girl, i can tell you really don't know much, i do need to know though, you are a virgin right? you know your first time might hurt some, so i need to know so i could try to make things as painless as possible.

Later on June 7, in a series of instant messages, Brown and "Brittany" discussed more specifically where in Georgia she lived, and Brown again asked what she would be comfortable doing, mentioning both oral and vaginal sexual contact. He then asked, "if we was to meet up, do you have any place in mind, or know of any places where we wouldnt be botherd during your learning process?" "Brittany" replied that she often would sneak out and meet friends behind her apartment. Brown emphasized that he was "serious about meeting up" with "Brittany."

On June 14, Brown initiated another series of instant messages with "Brittany." Brown asked whether she had found a "teacher" and stated that he would "still be willing to if your still interested." He asked "Brittany" when she "would like to do this," and the two arranged for a date and time to meet at her apartment. Brown asked "where are we going to do this" and suggested her room. When "Brittany" expressed concern about getting hurt, Brown responded, "I'll try not to, . . . i mean you know losing your virginity will be alittle painfull right?" He asked that "Brittany" "wear as

3

little as possible" when they met and stated that, although he was allergic to "protection," he could "pull out before i went too far" and also mentioned that he did not have any sexually transmitted diseases and that doctors had told him he was sterile. He then stated that "when it comes time for that, it maybe abit too painfull for you to handle, so may not beable to lose your virginity on the first time."

The two engaged in another series of instant messages on June 15 and 16. Brown asked "Brittany" to masturbate and digitally penetrate herself in preparation for their meeting. He later asked her how it felt and stated that it "will feel even better when someone eles does it." He also asked questions about how to contact her and find her apartment. And he again stated that he did not know if "Brittany" would experience pain and again suggested that she masturbate and digitally penetrate herself to give her "an idea of what it would feel like to lose your virginity."

On June 18, Brown asked "Brittany" in an instant message if she was looking forward to their meeting, planned for the next day, and the two confirmed the time and place of their meeting. Brown described the vehicle he would be driving and the clothes he would be wearing. The following morning, Brown arrived at the planned location in Whitfield County, Georgia, where law enforcement officers arrested him.

This evidence was sufficient to show attempted child molestation. The state was required to prove that Brown "took a substantial step towards doing 'any immoral or indecent act to or in the presence of or with any child under the age of 16 years with the intent to arouse or satisfy the sexual desires of either the child or (himself).'" (Quoting OCGA § 16-6-4 (a) (1), citing OCGA § 16-4-1.) *Castaneira v. State*, __ Ga. App. __, __ (2) (__ SE2d __) (Case No. A12A2149, decided March 26, 2013). The trial court could find from the evidence in this case that Brown traveled to an arranged location to have sexual intercourse with 14-year-old "Brittany," and that this was a substantial step toward committing the offense of criminal attempt to commit child molestation. See *Castaneira*, __ Ga. App. at __ (2) (evidence that defendant engaged in sexually explicit on-line communications with law enforcement officer posing as 15-year-old girl, arranged to meet her to engage in sexual activities, and went to the arranged meeting place was sufficient to sustain his conviction for attempted child molestation); *Logan v. State*, 309 Ga. App. 95, 99-100 (2) (a) (709 SE2d 302) (2011) (evidence that defendant, via electronic communications, asked law enforcement officer posing as 14-year-old girl to engage in sexual intercourse and oral sodomy, and then carried a condom to an arranged meeting place, was sufficient to show that defendant took a substantial step toward committing child molestation

5

and aggravated child molestation); *Smith v. State*, 305 Ga. App. 301, 302 (1) (702 SE2d 211) (2010) (evidence that defendant engaged in sexually explicit on-line conversations with an adult posing as a 15-year-old girl, drove to an arranged meeting place, and then fled from law enforcement officers who were waiting at that place, was sufficient to sustain his conviction for attempted child molestation). Compare *Heard v. State*, 317 Ga. App. 663, 666 (317 SE2d 663) (2012) (finding insufficient evidence to show that defendant had committed a substantial step toward committing crime of enticing a child, where even if intended victim had complied with defendant's requests, certain elements of the crime would not have been established). The fact that "Brittany" did not actually exist and thus Brown was never in "her" presence does not preclude his conviction for *attempted* child molestation. See *Dennard v. State*, 243 Ga. App. 868, 871 (1) (a) (534 SE2d 182) (2000).

2. *Jurisdiction.*

Brown argues that the state lacked jurisdiction to prosecute him because he was a Tennessee resident with no ties to Georgia before being lured to this state by law enforcement officers. But Georgia law pertinently provides that "a person shall be subject to prosecution in this state for a crime which he commits, either within or

6

outside the state, . . . if . . . [t]he crime is committed either wholly or partly within the state[.]" OCGA § 17-2-1 (b).

The state had jurisdiction under OCGA § 17-2-1 to prosecute Brown for attempted child molestation. Brown committed that crime at least partly within Georgia when he took a substantial step in Georgia toward committing child molestation, namely by traveling to Georgia to meet with 14-year-old "Brittany" for the purpose of engaging in sexual activities with her. See generally *Raftis v. State*, 175 Ga. App. 893, 894-895 (1) (334 SE2d 857) (1985) (Georgia had jurisdiction under OCGA § 17-2-1 to prosecute defendant for conspiracy to commit drug offense because there was evidence that defendant, while in Georgia, agreed to and made arrangements with another person to buy marijuana from a third party in Florida, authorizing a finding that defendant's conduct in Georgia was in furtherance of the conspiracy).

The state also had jurisdiction under OCGA § 17-2-1 to prosecute Brown for computer child exploitation. The Code section establishing that crime subjects a person to prosecution in Georgia under OCGA § 17-2-1 for "any conduct made unlawful under [OCGA § 16-12-100.2] which the person engages in while . . . [e]ither within or outside of this state if, by such conduct, the person commits a violation of

[OCGA § 16-12-100.2] which involves . . . another person believed by such person to be a child residing in this state." OCGA § 16-12-100.2 (h) Here, the evidence showed that, *after* being told that "Brittany" lived in Georgia, Brown violated OCGA § 16-12-100.2 by utilizing computer on-line services to continue to communicate with her and to entice her to meet him to engage in sexual activities. See OCGA § 16-12-100.2 (d) (1) (making it unlawful for any person intentionally or wilfully to, inter alia, utilize a computer on-line service to entice or attempt to entice a person believed to be a child to commit any illegal act described in OCGA § 16-6-4 relating to child molestation). In addition, in addressing violations of OCGA § 16-12-100.2, Georgia courts have held that a defendant utilizes computer on-line services in the county of the *recipient* of the computer messages, even when the defendant sent the messages from elsewhere. See *Patel v. State*, 282 Ga. 412, 412-413 (1) (651 SE2d 55) (2007) (defendant alleged to have violated OCGA § 16-12-100.2 by sending explicit Internet messages to a law enforcement officer posing as an underage girl "utilized computer on-line services in [the recipient's] [c]ounty," even though he sent the messages from a different county); *Selfe v. State*, 290 Ga. App. 857, 861-862 (2) (660 SE2d 727) (2008) (in case involving violation of OCGA § 16-12-100.2, citing *Patel* to find venue in county where law enforcement officer posing as underage girl received

8

sexually explicit messages, even though defendant sent them from a different county). Under the reasoning of these cases, Brown utilized computer on-line services in Georgia, where the law enforcement officer posing as "Brittany" received the messages. Accordingly, he committed the offense of computer child exploitation at least partly in Georgia, giving the state jurisdiction under OCGA § 17-2-1 to prosecute him for that offense.

3. *Merger*.

Alternatively, Brown argues that, for sentencing purposes, his conviction for attempted child molestation must merge into his conviction for computer child exploitation. The parties dispute whether merger is precluded by the provision of the computer child exploitation statute, which states that "[a]ny violation of this Code section shall constitute a separate offense." OCGA § 16-12-100.2 (i). We note that our Supreme Court has held that similar language in the statute establishing the offense of possession of a firearm or knife during the commission of a felony, OCGA § 16-11-106 (e), evidences a "legislative intent to provide punishment for both the possession offense and the predicate felony." *State v. Marlowe*, 277 Ga. 383, 385 (1) (a) (589 SE2d 69) (2002). But we need not resolve today the effect of the language in OCGA § 16-12-100.2 (i).

9

Even if, as Brown contends, merger of a computer child exploitation statute offense with an attempted child molestation offense is required in an appropriate case – OCGA § 16-12-100.2 (i) notwithstanding – merger is not required in this case. "To determine if one crime is included in and therefore merges with another, we apply the 'required evidence' test set forth in *Drinkard v. Walker*, 281 Ga. 211 (36 SE2d 530) (2006). Under that test, we examine whether each offense requires proof of a fact which the other does not." (Citation and punctuation omitted.) *Thomas v. State*, 292 Ga. 429, 433 (4) (738 SE2d 571) (2013). Here, the computer child exploitation offense required the state to prove that Brown used computer on-line services to entice a child to commit acts violating the prohibition against child molestation, OCGA § 16-12-100.2 (d) (1), which the state did not need to prove for the attempted child molestation conviction, OCGA §§ 16-4-1, 16-6-4 (a) (1). The attempted child molestation offense required the state to prove that Brown had the intent to commit child molestation and committed a substantial step toward the commission of that crime, OCGA §§ 16-4-1, 16-6-4 (a) (1), neither of which the state had to prove for the computer child exploitation conviction, OCGA § 16-12-100.2 (d) (1). Contrary to Brown's suggestion, the *Drinkard* required evidence test for merger applies to cases involving attempt crimes. See, e.g., *Castaneira*, __ Ga. App. at __ (6). Because

10

Brown's convictions for offenses in this case "each required proof of a fact which the other did not, . . . the trial court did not err in sentencing [him] on both of these convictions." Id. Accord *Thomas*, 292 Ga. at 433 (4).

*Judgment affirmed. Doyle, P. J., and Boggs, J., concur.*