**FIRST DIVISION**
**PHIPPS, C. J.,**
**ELLINGTON, P. J., and MCMILLIAN, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**April 2, 2014**

# In the Court of Appeals of Georgia

A14A0092. LOPEZ v. THE STATE.

ELLINGTON, Presiding Judge.

A Catoosa County jury found Emanuel Lopez guilty of using a computer internet service to seduce or entice another person believed by him to be a child for the purpose of committing child molestation and aggravated child molestation, in violation of Georgia's Computer or Electronic Pornography and Child Exploitation Prevention Act of 2007, OCGA § 16-12-100.2 (d); and attempting to commit a felony, OCGA §§ 16-6-1; 16-6-4 (c) (aggravated child molestation). Following the denial of his motion for a new trial,[1] Lopez appeals, contending that the indictment

---

[1] Although Lopez filed his motion for a new trial a few days before the trial court entered a written judgment of conviction, a Georgia appellate court will review on the merits an appeal from the denial of a prematurely filed motion for a new trial in a criminal case; the motion is deemed to ripen upon the entry of the judgment of conviction. *Rockholt v. State,* 291 Ga. 85, 86, n. * (727 SE2d 492) (2012); *Chumley*

and verdict were contrary to law because there was no actual victim; that the prosecution constitutes an unconstitutional criminalization of thoughts; that venue was not proper in Catoosa County; that the trial court erred in excluding expert opinion evidence that he lacked any predisposition to engage in sexual relations with underaged persons and that the State improperly enticed him; that the State failed to rebut his defense of entrapment; and that the trial court improperly excluded him from critical stages of the proceedings. For the reasons explained below, we affirm.

Viewed in the light most favorable to the jury's verdict,[2] the record shows the following. In June 2010, a detective with the Catoosa County Sheriff's Department, working in conjunction with the FBI's "Innocent Images" task force, placed an ad in the "Women Seeking Men" personals section of the Craigslist website posing as

---

*v. State*, 282 Ga. 855, n. * (655 SE2d 813) (2008); *Sparks v. State*, 277 Ga. 72, 73, n.1 (586 SE2d 645) (2003); *Juhan v. State*, 322 Ga. App. 620, 621, n. 3 (744 SE2d 910) (2013). Cf. *Tremble v. Tremble,* 288 Ga. 666, 668 (1) (706 SE2d 453) (2011) (In a civil case, a motion for a new trial that was filed prior to the entry of the judgment on the verdict was premature and invalid, and no amendment could be filed to such a void motion.); *Dae v. Patterson*, 295 Ga. App. 818, 819-820 (1) (673 SE2d 306) (2009) (A motion for new trial that was filed prior to the entry of the judgment on the verdict was premature and invalid. Therefore, there was no error in denying it, and all errors asserted on appeal that were necessarily premised on the denial of the motion for new trial could have no merit.).

[2]*Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

"Sara." Craigslist requires that a poster in that section confirm that she is at least eighteen years old. "Sara" described herself as "lonely and bored" since school was out and as hoping to "meet guys" and wanting someone who could "take [her] away." Lopez, using the e-mail address "latin.love69@live.com" and identifying himself as "Emanuel," responded to the ad, promising to "take [her] and do something exciting." He asked for personal details, including her age. "Sara" answered that she was fourteen years old; she said she would understand if he had "a problem with the age thing" but if he was "kool" he should e-mail her back. Lopez responded that he did not have a problem with her age and would treat her like an adult. He said he wanted to get to know her and would love to see a "dirty" picture of her.

Over the next week, they continued to exchange e-mails, and Lopez asked if they could meet in person. In one e-mail, Lopez said, "I want to meet you and talk to you and know about you. Sweety, I believe you are the sweetest person I know and you are real. But, you know, because of your age I have to be careful." He suggested that they get ice cream, take a walk and talk to get acquainted and said that he "would like to caress [her] a little, a hug, perhaps hold [her] hand, and just be with [her]." "Sara" responded that she thought he wanted to treat her like a woman, not like "a kid." She insisted that she did not want just "cyber" interaction and that "Emanuel"

3

should just "move on" if he only wanted to talk. Lopez then suggested that she wait in her bedroom when she was alone at home, wearing her sexiest outfit. He described a seduction scene in explicit detail, that included taking her nipple in his mouth, exploring her genitals with his hand, and performing oral sex on her.

They arranged to speak by telephone, and a female officer pretended to be the fourteen-year-old "Sara." In a following e-mail, "Sara" suggested that they meet at her aunt's house, when no one would be home, and asked "Emanuel" to bring wine coolers for them to drink and contraceptive protection. Lopez arrived at the time and place designated for his rendezvous with "Sara." Officers arrested Lopez and searched him and his vehicle; he had four condoms and personal lubricant in his possession.

After his arrest, Lopez gave task force officers a statement in which he admitted that he really thought he was communicating with a fourteen-year-old girl. Lopez admitted that he drove two hours to meet with "Sara" and that he went prepared to have sexual relations with her. He admitted that, "right this minute" (at the time officers were interviewing him), if "Sara" were real he "would be molesting a fourteen-year-old girl."

The indictment charged Lopez with violating OCGA § 16-12-100.2 (d), by "intentionally utiliz[ing] a computer Internet service to attempt to seduce and entice 'Sara,' a person believed by [him] to be a child, to commit child molestation or aggravated child molestation[,]" (Count 1)[3] and with criminal attempt, in that he took a substantial step toward the commission of aggravated child molestation when he "engage[d] in sexually explicit communications with 'Sara,' a person believed by [him] to be a fourteen (14) year old female, describe[d] his desire to place his mouth on her vaginal area, arrange[d] a meeting with 'Sara,' and arrive[d] at said meeting," (Count 2).

At trial, Lopez testified in his own defense and claimed that he thought he was communicating with an adult woman who was interested in role playing. He claimed that his intention was to go and "meet the real person that [he] thought [he] was talking to." He testified that, when he met "Sara" in person, if she had actually turned

---

[3] OCGA § 16-12-100.2 (d) (1) provides, as pertinent to the indictment, that it shall be unlawful for any person intentionally . . . to utilize a computer . . . Internet service . . . to seduce . . . or entice . . . another person believed by such person to be a child . . . to commit any illegal act by, with, or against a child as described in [OCGA §] 16-6-4, relating to the offense of child molestation or aggravated child molestation[.]

See also OCGA § 16-12-100.2 (b) (1) (As used in the Computer or Electronic Pornography and Child Exploitation Prevention Act of 2007, a "child" is "any person under the age of 16 years.").

out to be underaged, he would have walked away from the situation and that he would not have had sex with her. When confronted with his pretrial statement, he claimed that his answers to the officers' questions had been inaccurate or incomplete because he was too nervous and scared to think clearly.

1. Lopez contends that the indictment and verdict are contrary to law because there was no actual victim and the victim described in the complaint, a fourteen-year-old female named "Sara," was a fiction created by law enforcement agents.

(a) Although OCGA § 16-12-100.2 (d) references an underlying *purpose* of the prohibited conduct, including, as in this case, child molestation, the principal act proscribed is an act of *communication*, that is, the solicitation or enticement of another for the underlying purpose. *Bolton v. State*, 310 Ga. App. 801, 804-805 (1) (714 SE2d 377) (2011).[4] With regard to the victim, by its plain terms the statute is

---

[4] *Bolton v. State*, we explained the similarities between the computer child exploitation offense set out in OCGA § 16-12-100.2 (d) and the offense of enticement of a child under OCGA § 16-6-5 (a), which provides that "[a] person commits the offense of enticing a child for indecent purposes when he or she solicits, entices, or takes any child under the age of 16 years to any place whatsoever for the purpose of child molestation or indecent acts."

The statutory language in both OCGA §§ 16-6-5 (a) and 16-12-100.2 (d) (1) similarly proscribe the solicitation or enticement of a child for the underlying purpose of child molestation. In the context of OCGA § 16-6-5 (a), we have held that a conviction of the offense need not be based upon evidence that an act of indecency or child molestation was

6

violated if the defendant *believes* the victim to be a child, even if the person the defendant actually communicates with is not a child. Id.[5] Furthermore, the statute expressly provides that "[t]he sole fact that an undercover operative or law enforcement officer was involved in the detection and investigation under [the] code section shall not constitute a defense." OCGA § 16-12-100.2 (g). For these reasons, Lopez's argument lacks merit with regard to Count 1.

(b) To convict Lopez of criminal attempt to commit aggravated child molestation as indicted, the State was required to prove that he took a substantial step toward doing any immoral or indecent act to or in the presence of or with any child under the age of sixteen years with the intent to arouse or satisfy the sexual desires of either the child or himself and that the act involved sodomy. *Castaneira v. State*,

---

accomplished or even attempted. Rather, the evidence need only show that an act of indecency or child molestation was the intended motivation for the enticement.

(Citations and punctuation omitted.) 310 Ga. App. at 804-805 (1).

[5] See *Bolton v. State*, 310 Ga. App. at 804-805 (1) (The evidence supported the defendant's conviction under OCGA § 16-12-100.2 (d) (1) where he believed he was corresponding online with a 15-year-old girl and he solicited her to engage in sexual intercourse.); *Logan v. State,* 309 Ga. App. 95, 100 (2) (b) (709 SE2d 302) (2011) (The evidence supported the defendant's conviction under OCGA § 16-12-100.2 (d) (1) where he believed he was corresponding online with a 14-year-old girl and he encouraged her to meet him to engage in sexual intercourse and oral sodomy.).

321 Ga. App. 418, 423-424 (740 SE2d 400) (2013); *Logan v. State*, 309 Ga. App. at 99-100 (2) (a); see OCGA § 16-6-4. We have held that a conviction of attempted child molestation is authorized where the evidence shows that the defendant communicated with an adult whom the defendant believed to be a child under sixteen years old and took substantial steps to meet with that person to engage in sexual activity that would constitute child molestation. *Brown v. State*, 321 Ga. App. 798, 800 (1) (743 SE2d 474) (2013); *Castaneira v. State*, 321 Ga. App. at 423-424; *Logan v. State*, 309 Ga. App. 99-100 (2) (a); *Smith v. State*, 306 Ga. App. 301, 302 (1) (702 SE2d 211) (2010). Accordingly, Lopez's argument lacks merit as to Count 2.

2. Lopez contends that, as applied, OCGA § 16-12-100.2 (d) (1) unconstitutionally restricts speech between consenting adults which is sexual in nature, but not necessarily obscene, "upon the sole justification that one of the adults is pretending to be a child." He contends that, because the statute requires that a defendant have believed that he was communicating with a child, the law seeks to regulate and criminalize the thoughts of a human being.[6] Under OCGA § 16-12-100.2

[6] See *Stanley v. Georgia*, 394 U. S. 557, 564-566 (89 SCt 1243, 22 LE2d 542) (1969) (The United States Constitution protects the "right to receive information and ideas, regardless of their social worth" and "the right to be free, except in very limited circumstances, from unwanted governmental intrusions into one's privacy. . . . Whatever the power of the state to control public dissemination of ideas inimical to

8

(d) (1), however, even if a defendant believes that he or she is communicating with a child, a communication is prohibited only if the defendant engages in the communication for a prohibited underlying purpose, in this case, seducing or enticing a child so that the defendant can commit an act of child molestation. See Division 1 (a), supra. Lopez's argument that he was prosecuted under OCGA § 16-12-100.2 (d) (1) solely for the content of his thoughts fails.

3. Lopez contends that law enforcement agents induced him to enter Catoosa County by subterfuge for the purpose of obtaining venue and, therefore, that venue was not proper in Catoosa County, citing *McCarty v. State*, 152 Ga. App. 726, 726-727 (1) (263 SE2d 700) (1979).[7] First, the fact that Lopez transmitted the e-mails to "Sara" in Catoosa County constituted use of computer online services there for purposes of venue. *Selfe v. State*, 290 Ga. App. 857, 861-862 (2) (660 SE2d 727)

---

the public morality, it cannot constitutionally premise legislation on the desirability of controlling a person's private thoughts.") (citation omitted).

[7] In *McCarty v. State*, we held that, where undercover officers from Muscogee County negotiated a drug purchase in a suspect's home county, Sumter County, took possession of the drugs there, told the suspect that they would pay him in Muscogee County, and then drove the suspect in their car to Muscogee County solely in order to effect an arrest in their own jurisdiction, the officers' activities in "maneuvering" the suspect there via "a subterfuge" was insufficient to confer venue in that county because police officers cannot be permitted to create an essential element of a crime. 152 Ga. App. at 726 (1).

(2008). Furthermore, Lopez's travel to Catoosa County was an integral part of his plan to rendezvous with and then molest the fourteen-year-old girl he believed had been communicating with him. Venue was proper. Id., *Jones v. State*, 247 Ga. App. 849, 850-851 (545 SE2d 145) (2001) (Where a confidential informant working with officers in Cherokee County asked a suspected drug dealer located in Atlanta to deliver cocaine to her in Cherokee County and officers arrested the suspect after he arrived in Cherokee County to make the delivery, the suspect possessed cocaine with intent to distribute in Cherokee County. Therefore, venue there was proper.); see also *Brown v. State*, 321 Ga. App. 798, 801-802 (2) (743 SE2d 474) (2013) (rejecting the argument of a Tennessee resident that the State of Georgia lacked jurisdiction to prosecute him for computer child exploitation and attempted child molestation because he had no ties to Georgia before being lured to this state by law enforcement officers who had posted an ad on Craigslist posing as a fourteen-year-old girl).

4. Lopez contends that his psychological state, specifically, whether he was predisposed to seek sexual relations with minors, was relevant to his defense of entrapment. Lopez contends that the trial court therefore erred in excluding expert opinion evidence that the State improperly enticed him and that he lacks any predisposition to engage in sexual relations with underaged persons.

10

Lopez proffered the testimony of Dave Davis, M.D., a forensic psychiatrist who interviewed Lopez and conducted a forensic psychological and psychiatric examination. Lopez intended to call Dr. Davis to testify that, in his opinion, Lopez did not have any psychological tendencies to have sex with minor children and that the police e-mails had the psychological effect of enticing him to commit such crimes.

"If [a] defendant establishes a prima facie case of entrapment, the burden is then upon the State to disprove entrapment beyond a reasonable doubt." (Punctuation and footnote omitted.) *Millsaps v. State*, 310 Ga. App. 769, 773 (3) (714 SE2d 661) (2011). One of the elements of entrapment is that "the defendant was not predisposed to commit the crime." (Footnote omitted.) Id. at 772-773 (3).[8] Under Georgia law,

_____

[8]OCGA § 16-3-25 provides that

[a] person is not guilty of a crime if, by entrapment, his conduct is induced or solicited by a government officer or employee, or agent of either, for the purpose of obtaining evidence to be used in prosecuting the person for commission of the crime. Entrapment exists where the idea and intention of the commission of the crime originated with a government officer or employee, or with an agent of either, and he, by undue persuasion, incitement, or deceitful means, induced the accused to commit the *act which the accused would not have committed except for the conduct of such officer*.

(Emphasis added.) See also *Keaton v. State*, 253 Ga. 70, 72 (316 SE2d 452) (1984) (The defendant's "innocent state of mind," that is, his or her lack of a predisposition to commit the crime, is a key element to the defense of entrapment.); *Wagner v. State*, 220 Ga. App. 71, 72 (467 SE2d 385) (1996) ("Because the concept of entrapment involves the predisposition of the accused, the question, like all fact questions, is

11

"where (a) the path from evidence to conclusion is not shrouded in the mystery of professional skill or knowledge, and (b) the conclusion determines the ultimate issues of fact in a case, the jury must make the journey from evidence to conclusion without the aid of expert testimony." (Citations and punctuation omitted.) *Williams v. State*, 254 Ga. 508, 510 (2) (330 SE2d 353) (1985). In general, expert testimony that a defendant does not have the psychological characteristics of a person who is predisposed to having sexual contact with underaged children invades the province of the jury as to the ultimate issue, that is, the defendant's guilt or innocence, and is properly excluded. *Duncan v. State*, 232 Ga. App. 157, 161-162 (4) (500 SE2d 603) (1998)[9]; *Hudson v. State*, 218 Ga. App. 671, 674-675 (4) (462 SE2d 775) (1995). We

___

generally one for the jury to decide.") (citation and punctuation omitted).

[9] Where a defendant accused of molestation planned to call an expert to testify, based on psychological tests, that the defendant did not have the characteristics of a pedophile, we concluded that

> there is *no* authority for the admission of an expert opinion that the *defendant* who is on trial for sex crimes against a child *is or is not* a pedophile. The profile testimony sought to be introduced by the defendant goes to the credibility and believability of his own testimony that he did not commit the acts charged and further speaks to the ultimate fact of whether he committed those acts. From the extensive testimony and cross-examination of the various witnesses at trial, the jury, without the help of expert opinion, could have determined the credibility and truthfulness of all the witnesses and could have formed independent opinions as to the victim's truthfulness and the defendant's

12

conclude that the trial court did not abuse its discretion in ruling that whether Lopez would have committed the crime charged *absent* the inducement of law enforcement officers was a question the jury could and must resolve without the assistance of expert opinion evidence and that Dr. Davis's opinions on the subject were therefore inadmissible.

5. Lopez contends and that the State failed to rebut his defense of entrapment. "The determination of whether the defendant was entrapped is for the jury unless the uncontroverted evidence demands a finding of entrapment." (Punctuation and footnote omitted.) *Logan v. State*, 309 Ga. App. at 98 (1) (a). As recounted above, the evidence in this case authorized the jury to find that, in response to an e-mail from Lopez suggesting that he and the supposedly fourteen-year-old girl share ice cream and hold hands, "Sara" indicated that, unless "Emanuel" wanted a relationship that went beyond internet talk and would treat her as an adult, he should "move on." Lopez immediately escalated the interchange by explicitly describing sexual acts that

---

capability of performing the acts he was accused of. These determinations did not involve unique and mysterious areas of human response necessitating expert testimony. There was no error in excluding this testimony, because such testimony invades the province of the jury as to the ultimate issue, i.e., the defendant's guilt or innocence.

(Citation and punctuation omitted; emphasis in original.) *Duncan v. State*, 232 Ga. App. at 161-162 (4).

he proposed performing for her, discussing how they would meet in person, and traveling to meet with her, equipped with condoms and lubricant and with the intention of having sex. The evidence does not demand a finding of entrapment. *Millsaps v. State*, 310 Ga. App. at 773-774 (3); *Logan v. State*, 309 Ga. App. at 98 (1) (a).

6. Lopez contends that, on several occasions during voir dire and trial, he was excluded from discussions at the bench between the judge, the prosecutor, and his defense counsel, in violation of his constitutional right to be present during all critical stages of the proceedings. The trial transcript suggests that Lopez did not participate in some bench conferences, and, at the hearing on his motion for a new trial, he affirmatively testified that he did not do so. Therefore, there is some support in the record for Lopez's argument that he was not "present" during all stages of the trial. The judge who presided over Lopez's trial found, however, that he had advised Lopez of his right to participate in any bench conference. A defendant is not entitled to a new trial if he acquiesced in limited trial proceedings that occurred in his absence. See *Zamora v. State*, 291 Ga. 512, 517-520 (7) (731 SE2d 658) (2012) (A criminal defendant is entitled to be present, and see and hear, all critical stages of the proceedings against him or her, and a discussion about dismissing a juror was such

14

a critical stage. A new trial was not warranted on this basis, however, where the defendant acquiesced in the limited trial proceedings that occurred in his absence.). Furthermore, Lopez has not shown what subjects were discussed at the bench conferences that occurred outside of his presence; therefore, he has not shown any meaningful relationship between his presence or absence at the conferences and his opportunity to defend against the charges against him. *Heywood v. State*, 292 Ga. 771, 774 (3) (743 SE2d 12) (2013) (A defendant's absence from a bench conference involving a logistical or procedural matter or an evidentiary objection or other question of law, where the defendant's presence would be useless, does not bear a reasonably substantial relation to the defendant's opportunity to defend against the charges against him or her and, therefore, does not implicate the defendant's constitutional right to be present at proceedings.); *Smith v. State*, 319 Ga. App. 590, 596-597 (6) (737 SE2d 700) (2013) (accord). The trial court did not err in denying Lopez's motion for a new trial on this basis.

*Judgment affirmed. Phipps, C. J., and McMillian, J., concur.*