## A10A2100. LOGAN v. THE STATE.
(709 SE2d 302)

DOYLE, Judge.

After a jury trial, William Glenn Logan was convicted of one count of violating the Computer or Electronic Pornography and Child Exploitation Prevention Act of 2007 by utilizing the internet to seduce, solicit, lure, or entice a child or another person believed by such person to be a child to commit an illegal sex act;[1] attempted aggravated child molestation;[2] and attempted child molestation.[3] Logan appeals, arguing that (1) he was entrapped by law enforcement; (2) his trial counsel was ineffective for failing to raise the issue of entrapment in his motion for a directed verdict of acquittal; (3) the evidence was insufficient to support his conviction for solicitation; (4) he was illegally stopped and interrogated; and (5) his right to a jury trial was violated by improper plea bargaining, which threatened a longer sentence if he proceeded to trial. We affirm for the reasons that follow.

On appeal from a criminal conviction, the evidence must be viewed in the light most favorable to the verdict,

---

[1] OCGA § 16-12-100.2 (d) (1).

[2] OCGA §§ 16-4-1; 16-6-4 (c).

[3] OCGA §§ 16-4-1; 16-6-4 (a).

and the appellant . . . no longer enjoys the presumption of innocence; moreover, an appellate court does not weigh the evidence or determine witness credibility but only determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*.[4] Conflicts in the testimony of the witnesses, including the State's witnesses, are a matter of credibility for the jury to resolve. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld.[5]

So viewed, the evidence presented at trial established that on September 15, 2008, an officer with the Internet Crimes Against Children Task Force operating in north Georgia, posted an advertisement in the "Casual Encounters" section of Craig's List, a website that functions similarly to a newspaper classified advertisement section. The advertisement appeared to be from a young female willing to have casual sexual relationships with interested men. That same day and again on September 17, 2008, Logan responded to the ad using the e-mail handle wglogan2005. The officer posing as the female named Tiffany Bankston responded to Logan's e-mail, telling him "like [I] said[, I'm] very mature an[d] interested. [J]ust wanted to let you know up front [I'm] not quite 18" and sending pictures of a 13-year-old female from an FBI database.

Logan responded to Tiffany Bankston, asking what she was interested in specifically and whether she would travel to his location or wanted to "get a room." The officer responded to Logan as Tiffany Bankston and told him that she was 14 years old, to which Logan responded by stating, "Wow[,] I might break you," inquiring for more pictures, and asking her to converse with him through an instant messenger service. Logan conversed with Tiffany Bankston on the evening of September 17, 2008, describing his genitals and asking what she was interested in sexually. Logan renewed this conversation with her on September 19, 2008, during which, at the behest of the officer, Logan transmitted a "thumbnail" photograph of himself, which while small, showed Logan's face. During this conversation, Logan expressed his desire to perform oral sex on her, to have her perform oral sex on him, and to engage in sexual intercourse with her. Logan also asked her if she had previously engaged in sexual intercourse, and the officer asked Logan if he would have a contraceptive because she did not want to get pregnant.

---

[4] 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[5] (Punctuation omitted.) *McKay v. State*, 234 Ga. App. 556, 556-557 (1) (507 SE2d 484) (1998).

The conversation turned to meeting in person, and the officer suggested meeting at Elise Holmes Park in Catoosa County, Georgia, which the task force selected because of its secluded location and minimal traffic. Logan again engaged in sexually explicit conversation with Tiffany Bankston, describing the sex acts that he wanted to perform with her on the benches at the park and assuring her that he would meet her there at the determined time and date.

Officers from the task force arrived at the park prior to Logan and witnessed one vehicle drive up to the park entrance, leave, and then return and drive through the park gate, at which time the vehicle, driven by Logan, was stopped. Officer Dave Scroggins conducted the stop, and FBI agent Ken Hillman explained to Logan that the officers were with a task force for internet crimes against children. Logan immediately responded to Hillman that he was at the park to counsel a 14-year-old girl about the dangers of meeting men from the internet. In Logan's vehicle, officers discovered a cellphone matching the brand from which Tiffany Bankston received e-mails from Logan, and the phone contained the e-mail address used by Logan. Officers also discovered a condom in Logan's possession.

1. (a) Logan contends that his convictions should be reversed because he was entrapped by law enforcement. We disagree.

Entrapment is an affirmative defense that is established by showing that (1) the idea for the crime originated with the State agent; (2) the defendant was induced by the agent's undue persuasion, incitement, or deceit; and (3) the defendant was not predisposed to commit the crime.[6]

> As a general rule, in order to raise the defense of entrapment, the defendant must first admit the commission of the crime and then show that he did so because of the unlawful solicitation or inducement of a law enforcement officer. The rationale for this rule is that it is thought to be factually inconsistent and confusing for a defendant to deny that he committed a criminal act and simultaneously to complain that he was entrapped into its commission. But, if a reasonable inference of entrapment may be drawn by a rational jury from the State's evidence, the defendant is entitled to a jury charge on entrapment unless he has presented evidence of entrapment inconsistent with his denial of the commission of the crime.[7]

"If the defendant establishes a prima facie case of entrapment,

---

[6] See *St. Jean v. State*, 255 Ga. App. 129, 130 (564 SE2d 534) (2002).

[7] (Citations and punctuation omitted.) Id.

the burden is then upon the [S]tate to disprove entrapment beyond a reasonable doubt. The determination of whether the defendant was entrapped is for the jury unless the uncontroverted evidence demands a finding of entrapment."[8]

Here, as testified to by a task force officer, Logan's statement upon being approached by the officers at the park was that he came there in order to counsel "Tiffany Bankston" about the dangers of meeting older men from the internet. Logan did not testify or otherwise present evidence admitting that he committed the alleged crimes. Even without such admission, however, the trial court charged the jury on entrapment, and the jury's conclusion that entrapment did not occur is supported by the record evidence, including the facts that (1) Logan continued communicating with and did not report Tiffany Bankston to Craig's List[9] when he learned that she was 14 years old; (2) Logan initiated the explicit nature of the online conversations between the two; (3) Logan initiated the conversation during which the meeting was arranged and described in detail the sex acts he wished to perform on Tiffany Bankston at the park; and (4) Logan arrived at the park with a condom on his person.[10]

(b) Logan also contends that he received ineffective assistance of counsel because counsel failed to raise entrapment in his motion for a directed verdict of acquittal.

> To show ineffective assistance of counsel, a defendant must show that counsel's performance was deficient and that the deficient performance prejudiced the defense. More specifically, a defendant must show that trial counsel's deficient performance created a reasonable probability of a different outcome.[11]

"Whether the [S]tate has satisfied [its burden of disproving entrapment] generally rests with the jury and only when there is no conflict in the evidence and all evidence demands a finding of entrapment must the trial judge direct a verdict of acquittal."[12] For the reasons discussed in Division 1 (a), the evidence presented did

---

[8] (Citation omitted.) *Jackson v. State*, 305 Ga. App. 591, 593 (699 SE2d 884) (2010).

[9] The website requires users to verify that they are 18 years old in order to post advertisements in the section in question.

[10] See *St. Jean*, 255 Ga. App. at 130-131 (although the idea for the crime originated with the State, if the defendant offered no evidence of undue persuasion, incitement, or deceit, or that defendant was not predisposed to commit the crime, then there is no entrapment).

[11] (Citations omitted.) *Robinson v. State*, 308 Ga. App. 45, 46 (2) (706 SE2d 577) (2011). See also *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984).

[12] (Punctuation omitted.) *Lightsey v. State,* 289 Ga. App. 181, 183 (2) (656 SE2d 852) (2008).

not demand a finding of entrapment as a matter of law because, among other things, Logan did not admit to committing the charged crimes, and thus, Logan has not shown that his counsel's performance was deficient.[13]

2. Logan contends that his convictions should be reversed because the State failed to produce evidence that he attempted to solicit underage sexual intercourse. We disagree.

(a) Logan argues that the State failed to show that he took a substantial step toward completing either the offense of child molestation or the offense of aggravated child molestation. We disagree.

OCGA § 16-4-1 states that "[a] person commits the offense of criminal attempt when, with intent to commit a specific crime, he performs any act which constitutes a substantial step toward the commission of that crime."

> [A]n act constituting a substantial step is one done in pursuance of the intent, and more or less directly tending to the commission of the crime. In general, the act must be inexplicable as a lawful act, and must be more than mere preparation. Yet it can not accurately be said that no preparations can amount to an attempt. It is a question of degree, and depends upon the circumstances of each case. The phrase "inexplicable as a lawful act" does not mean that the act itself must be unlawful. Rather, it means that the act, in light of previous acts, constitutes a substantial step toward the commission of a crime. The substantial step requirement shifts the emphasis from what remains to be done to what the actor has already done. The fact that further steps must be taken before the crime can be completed does not preclude such a finding that the steps already undertaken are substantial.[14]

Via electronic communications, Logan asked the undercover officer posing as Tiffany Bankston to engage in sexual intercourse and oral sodomy with him, even after she told him she was 14.[15] Logan then arrived at the park — the location the two had discussed

---

[13] See, e.g., *Robinson*, 308 Ga. App. at 49 (2) (e) ("failure to make meritless motion cannot amount to ineffective assistance").

[14] (Punctuation, footnote and emphasis omitted.) *English v. State*, 301 Ga. App. 842, 843 (689 SE2d 130) (2010).

[15] See *Redman v. State*, 281 Ga. App. 605 (1) (636 SE2d 680) (2006) (evidence that defendant asked the victim to perform a sex act was sufficient to support conviction for attempted child molestation).

meeting for sex — and he possessed a condom on his person.[16] These facts are sufficient to show that Logan took a substantial step toward committing child molestation[17] and aggravated child molestation.[18]

(b) Logan also contends that his conviction pursuant to OCGA § 16-12-100.2 (d) (1)[19] should be reversed because there is insufficient evidence that he lured or enticed Tiffany Bankston to meet him to engage in underage sexual intercourse. Again, we disagree. The evidence presented at trial shows that although Logan initially responded to an advertisement posted by a female he believed to be over 18 years old, Logan engaged in and continued to initiate sexually explicit conversations with the undercover officer posing as Tiffany Bankston after she told him she was 14 in an effort to engage in sex acts with Bankston, and he encouraged her to meet him in person to engage in those acts.

3. Logan argues that the trial court erred by denying his motion to suppress his statements to law enforcement officers because they were the fruit of an illegal interrogation. We disagree.

"In considering an appeal from denial of a motion to suppress, this Court construes the evidence in favor of the trial court's ruling, and we review de novo the trial court's application of the law to undisputed facts. Absent an abuse of discretion, the trial court's order on a motion to suppress will not be disturbed."[20]

---

[16] See *Smith v. State*, 306 Ga. App. 301, 302 (1) (702 SE2d 211) (2010) (affirming conviction for attempted child molestation because the defendant engaged in sexually explicit conversations with the victim, drove to an arranged location, and fled from officers). Cf. *Dennard v. State*, 243 Ga. App. 868, 873 (1) (b) (534 SE2d 182) (2000) (addressing attempt to commit child molestation on appeal from special demurrer to an indictment). See also OCGA § 16-4-4 ("It is no defense to a charge of criminal attempt that the crime the accused is charged with attempting was, under the attendant circumstances, factually or legally impossible of commission if such crime could have been committed had the attendant circumstances been as the accused believed them to be.").

[17] OCGA § 16-6-4 (c) (defining aggravated child molestation as oral sodomy on an individual under the age of 16).

[18] OCGA § 16-6-4 (a) (defining child molestation as a sexual touching on an individual under the age of 16).

[19] It shall be unlawful for any person intentionally or willfully to utilize a computer on-line service or Internet service, including but not limited to a local bulletin board service, Internet chat room, e-mail, on-line messaging service, or other electronic device, to seduce, solicit, lure, or entice, or attempt to seduce, solicit, lure, or entice a child or another person believed by such person to be a child to commit any illegal act described in Code Section 16-6-2, relating to the offense of sodomy or aggravated sodomy; Code Section 16-6-4, relating to the offense of child molestation or aggravated child molestation; Code Section 16-6-5, relating to the offense of enticing a child for indecent purposes; or Code Section 16-6-8, relating to the offense of public indecency or to engage in any conduct that by its nature is an unlawful sexual offense against a child.
OCGA § 16-12-100.2 (d) (1).

[20] (Citation omitted.) *Smith v. State*, 262 Ga. App. 614, 615 (585 SE2d 888) (2003).

A police officer may make a momentary detention and investigation based upon specific and articulable facts, which must exceed mere inclination, caprice, or harassment. The principal components of a determination of reasonable suspicion or probable cause will be the events which occurred leading up to the stop or search, and then the decision whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to reasonable suspicion or to probable cause.[21]

"[N]ot every detention equates with an arrest. A law enforcement officer coming upon the scene of suspected criminal activity will conduct a general on-the-scene investigation and may detain temporarily anyone at the scene. Such detentions do not trigger the requirements of *Miranda v. Arizona*."[22]

The determination of whether an interrogation occurs focuses primarily upon the reasonable perceptions of the suspect and not the intent of the officer, although the officer's intent is relevant. This focus reflects the fact that the *Miranda* safeguards were designed to vest a suspect in custody with an added measure of protection against coercive police practices, without regard to objective proof of the underlying intent of the police.[23]

Here, the trial court determined that the stop of Logan's car was authorized by the facts before the officers — he arrived at 10:00 p.m. in an isolated location in a vehicle with a Tennessee license plate, which fit the description of the individual whom the task force was investigating.[24] The investigating officer stopped Logan's vehicle and explained the reason for the stop, and these statements would not objectively be understood to be an interrogation.[25] The trial court, therefore, did not err by determining that Logan's response that he

---

[21] (Citations and punctuation omitted.) Id. at 617 (1).

[22] (Punctuation omitted.) Id. at 618 (2). See also *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

[23] (Citation and punctuation omitted.) *Lopez v. State*, 285 Ga. App. 355, 356 (646 SE2d 271) (2007).

[24] See *Smith*, 262 Ga. App. at 617-618 (1).

[25] See *Lopez*, 285 Ga. App. at 356 ("The definition of interrogation can extend only to words or actions on the part of police officers that they should have known were reasonably likely to elicit an incriminating response.") (punctuation omitted). Compare with *Smith*, 262 Ga. App. at 617-619 (2) (holding that the officer's actions triggered the defendant's right to the protections of *Miranda* because a reasonable person "would have believed that her detention was more than just that required for temporary questioning").

was at the park in order to counsel a 14-year-old girl was spontaneous and voluntary and, thus, admissible.[26] Moreover, because Logan was properly *Mirandized* prior to giving a later statement to officers, the trial court did not err by admitting that statement.

4. Finally, Logan contends that his right to a jury trial was violated by illegal plea bargaining, which threatened a longer sentence if he proceeded to trial. Logan's arguments were recently addressed by this Court in *Rana v. State*[27] and held to be without merit.

*Judgment affirmed. Ellington, C. J., and Andrews, J., concur.*

DECIDED MARCH 17, 2011 —
RECONSIDERATION DENIED MARCH 31, 2011 — 

*McNeill Stokes*, for appellant.
*Herbert E. Franklin, Jr., District Attorney, Alan C. Norton, Assistant District Attorney*, for appellee.

---

[26] Logan argues that the State conceded that he was in custody at the time the statements were made; however, the trial court heard the evidence presented by the witnesses during the motion to suppress, and based on those facts, the trial court determined that Logan's statements were spontaneously and voluntarily made after an authorized stop, based on reasonable articulable suspicion. See *Smith*, 262 Ga. App. at 620 (2).

[27] 304 Ga. App. 750, 754 (4) (697 SE2d 867) (2010) ("We have consistently rejected this type of constitutional attack on the plea bargain process.").