**FIRST DIVISION**
**PHIPPS, C. J.,**
**ELLINGTON, P. J., and MCMILLIAN, J.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/**

**December 18, 2014**

# In the Court of Appeals of Georgia

A14A1509. BEAVER v. THE STATE.

McMILLIAN, Judge.

Following a jury trial in November 2012, Gregory Beaver was convicted of 15 counts of sexual exploitation of children and sentenced to 20 years, 15 to serve. Beaver timely filed a motion for new trial , which the trial court denied. On appeal, Beaver asserts that (1) the evidence was insufficient to sustain his convictions and (2) the trial court erred in allowing the jury to view portions of pornographic videos recovered from his computer. Finding no error, we affirm.

Viewed in the light most favorable to the jury's verdict,[1] the evidence shows that Forsyth County Sheriff's Office Investigator Jeffrey Roe conducted investigations over the internet as a member of the Internet Crimes Against Children

---

[1] *Jackson v. Virginia*, 443 U.S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

Task Force. As part of his investigations, Roe worked to identify computers that contained suspected child pornography. In particular, the task force members looked for "file sharing" programs, which allow computers on the same network to access content from other computers. LimeWire, which was later confirmed to have been installed on the computer used by Beaver, was such a program. At trial, Roe explained how LimeWire works, including how users search for and download particular files. He also explained that each file has a "hash value," which is a numerical value unique to every file, much like a digital fingerprint. As a result of his investigation, Roe identified an IP[2] address that was utilizing the LimeWire program to access files that he suspected contained child pornography. The IP address belonged to Judy Vess, Beaver's mother. At that time, Beaver was living at his mother's home, along with his wife, Christina Deal, and her young daughter.

Roe then handed the information over to local investigator Katria Johnson, who executed a search warrant at Vess's home in May 2010. GBI forensic computer specialist Vickie Adams examined two computers found at that address. The one in Vess's office did not contain any evidence of child pornography. However, the

---

[2] IP stands for internet protocol. Roe explained that it is like a telephone number for a computer and that no two computers on the internet maintain the same IP address at the same time.

2

computer found inside Beaver's bedroom was ultimately found to contain known child pornography[3] in five separate locations: a folder labeled "Chrissie music folder," a LimeWire saved folder, the recycle bin, a folder containing incomplete downloads, and the computer's unallocated space. Adams was able to determine that approximately 54 pictures and 23 videos had been downloaded between May 2009 and May 2010.[4] She testified as to the dates and times of the downloads, and short portions of some of the videos were briefly displayed to the jurors.

At trial, Deal testified that she and Beaver met in March 2009, and he moved in with her the following month. At the time, she was living with her parents and her infant daughter. She and Beaver married in June 2009 and continued living in a converted garage in the back of her parents' home. In 2008, Deal's brother and father had built her a computer so that she could go back to school. She explained that she

---

[3] Those files had a known hash value, which means that the victims depicted in the files had been previously identified by the National Center for Missing and Exploited Children or the files had previously been used in a case and deemed child pornography. At trial, pediatrician Dana Hogan testified for the State as an expert in determining children's ages using the Tanner Scale. In her opinion, the children depicted in the materials described in each of the remaining counts of the indictment ranged in age from 6 years to 16 years.

[4] The State ultimately indicted Beaver on 19 counts of sexual exploitation of children in violation of OCGA § 16-12-100, but nolle prossed four counts of the indictment just prior to trial.

downloaded LimeWire right after she received the computer so that she could download music. However, once Beaver moved in with her, whenever she wanted to download new music, she would ask Beaver to download it for her. Although her computer was password protected, Beaver knew the password.

Beaver was not employed and would stay at home and use the computer daily. Deal began working in September 2009 and would sometimes not return home until after her shift ended at midnight. She often saw Beaver using the computer when she woke up in the morning and again when she went to bed at night. In January 2010, they moved to Vess's house where she, Beaver, and her daughter shared a bedroom. She brought her computer with them, and Beaver continued to use it daily.

Beaver was arrested not too long after they moved in with Vess, but returned at approximately midnight on March 18, 2010.[5] Deal testified that she was upset when Beaver immediately began using the computer again as soon as he came home and stayed on the computer after she went to sleep. The State presented stipulated evidence that Beaver was in fact incarcerated three separate times after he married Deal: (1) from August 3, 2009 to August 13, 2009; (2) from December 1, 2009 to December 22, 2009; and (3) from February 27, 2010 to March 18, 2010. No files

---

[5] That arrest was unrelated to the charges brought in this case.

containing child pornography that were located on the computer found in Beaver's bedroom were downloaded during any of those three periods of incarceration, but one such file was downloaded just hours after Beaver was released from jail on March 18, 2010. The jury convicted Beaver on all counts, and the trial court denied his subsequent motion for new trial. This appeal followed.

1. We first address Beaver's challenge as to the sufficiency of the evidence.

> When a criminal defendant challenges the sufficiency of the evidence supporting his or her conviction, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. The jury, not this Court, resolves conflicts in the testimony, weighs the evidence, and draws reasonable inferences from basic facts to ultimate facts. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld.

(Citations and punctuation omitted; emphasis in original.) *Wright v. State*, 302 Ga. App. 332, 332 (690 SE2d 654) (2010).

Beaver claims that the State failed to exclude every other reasonable hypothesis save that of his guilt pursuant to OCGA § 24-4-6.[6] However,

---

[6] This case was tried under Georgia's previous Evidence Code. Former OCGA § 24-4-6 provided that, "[t]o warrant a conviction on circumstantial evidence, the

[q]uestions as to the reasonableness of hypotheses are generally to be decided by the jury which heard the evidence and where the jury is authorized to find that the evidence, though circumstantial, was sufficient to exclude every reasonable hypothesis save that of guilt, that finding will not be disturbed unless the verdict of guilt is insupportable as a matter of law.

(Citation and punctuation omitted.) *Wright*, 302 Ga. App. at 333.

Beaver argues that there are other reasonable hypotheses to explain how the child pornography came to be on the computer. Namely, a computer virus could have been responsible for downloading the files, or other people, including Deal's two brothers – who were computer savvy, did not like him, and had access to the computer – could have downloaded the files. However, Adams, a GBI expert in computer forensics, explained that, although there were viruses on the computer, which were "very common," there was no evidence that a virus had downloaded any of the illegal files. Adams concluded that, because only some of the files were deleted, and other files were found in various folders and downloaded on multiple

---

proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused." Former OCGA § 24-4-6 is carried forward in the new Evidence Code as OCGA § 24-14-6.

6

days, they were not the result of a virus. Moreover, she had never seen a case in which a virus conducted a search for child pornography on a file-sharing program and then downloaded the files onto someone's computer. She also found no evidence that anyone had "hacked" into the computer.

In addition, Deal and her mother both testified that they did not download child pornography onto the computer. Vess likewise testified that she never downloaded or viewed child pornography on the computer. Deal's brother who helped build the computer testified that it was new and "clean" when he gave it to his sister. He moved out of his parents' house in 2004 or 2005 and never remotely accessed the computer. Deal's other brother also testified at trial and stated that he never lived at his parents' house while Beaver was there, he never used the computer when he visited, and he never remotely accessed it. Both brothers specifically denied downloading child pornography onto the computer.

While it may have been possible for someone else to have learned the computer's password, gained access to the computer, and downloaded the illegal files beginning just one month after Beaver moved in with Deal and only on days when Beaver was not incarcerated, "whether such a hypothesis was reasonable or improbably coincidental was for the jury to determine." *Wright*, 302 Ga. App. at 334.

7

See also *McNeal v. State*, 326 Ga. App. 429, 432 (1) (756 SE2d 660) (2014) ("In order to support a conviction, such circumstantial evidence does not have to exclude *every* possible hypothesis other than the defendant's guilt, but only *reasonable* hypotheses.") (citation omitted; emphasis in original); *Cox v. State*, 300 Ga. App. 109, 110 (684 SE2d 147) (2009) (reasonable hypotheses do not include "bare possibilities that the crime could have been committed by someone else") (citation and punctuation omitted). Given the record before us, we cannot say that the jury's guilty verdicts are insupportable as a matter of law. See *Haynes v. State*, 317 Ga. App. 400 (731 SE2d 83) (2012) (evidence showing that files containing child pornography found on defendant's computer had been intentionally moved or downloaded to his computer and the files had been modified on various dates was sufficient and any conflicting evidence was for the jury to resolve). See also *Tennille v. State*, 279 Ga. 884, 885 (2) (622 SE2d 346) (2005) (whether evidence of equal access is sufficient to rebut inference of possession arising from discovery of contraband on defendant's computer was a question for the trier of fact).

2. Beaver also contends that the trial court erred in allowing the jury to view portions of the videos rather than still shots taken from the videos. Prior to trial, Beaver moved in limine to preclude the State from presenting the actual videos to the

jury, arguing that showing video clips rather than still shots was unfairly prejudicial. The trial court denied his motion, but limited the State's presentation of the videos to 10-12 seconds per video.[7] The test for excluding relevant evidence has been well set out: "relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." (Citation and punctuation omitted.) *Ross v. State*, 279 Ga. 365, 366 (2) (614 SE2d 31) (2005). And, a "trial court's determination on this issue will not be disturbed absent an abuse of discretion." Id.

"The term unfair prejudice, as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." (Citation and punctuation omitted.) *Ross*, 279 Ga. at 367 (2). In *Simpson v. State*, 271 Ga. 772 (523 SE2d 320) (1999), the Supreme Court clarified that in a prosecution for a sexual offense, sexually explicit material can only be admitted if it can be linked to the crime charged. Id. at 774 (1). Here, the videos presented were clearly directly relevant to the specific offenses charged. And where the trial court limited their prejudicial impact

---

[7] The trial court otherwise permitted the State to introduce testimony describing the actual length and overall content of each video.

by significantly restricting the State's use of the videos that were themselves the subject of the charges against Beaver, we find no abuse of discretion.[8] See *Henderson v. State*, 320 Ga. App. 553, 555 (1) (740 SE2d 280) (2013) (noting that jury was authorized to conclude that the children depicted in videos were clearly prepubescent and the State therefore met its burden of proving the children were under the age of 18). See also *Ross*, 279 Ga. at 367 (2) ("a criminal defendant may not stipulate or admit his way out of the full evidentiary force of the case as the State chooses to present it") (citation and punctuation omitted).

Accordingly, the trial court did not err in denying Beaver's motion for new trial.

*Judgment affirmed. Phipps, C. J., and Ellington, P. J., concur.*

---

[8] We also note that Beaver does not argue that the content of the 10-12 second video clips was unrepresentative of what was depicted on the videos, or that the specific content shown was more prejudicial than what would be portrayed in corresponding still shots, other than making the unsupported assertion that moving video is always more prejudicial than still shots.