**FIFTH DIVISION**
**PHIPPS, P. J.,**
**DILLARD and PETERSON, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**May 26, 2016**

# In the Court of Appeals of Georgia

A16A0524. PATCH v. THE STATE.

DILLARD, Judge.

Phillip Patch appeals his convictions for three counts of computer or electronic pornography and child exploitation, arguing that the evidence was insufficient to support his convictions and that the trial court erred by admitting identification testimony of an investigating officer based solely on his observations of photographs and webcam videos that were unavailable to the jury. For the reasons set forth *infra*, we affirm.

Viewed in the light most favorable to the jury's guilty verdict,[1] the record shows that, in 2010, Stephen Land—who was, at that time, a corporal with the Gwinnett County Police Department's Special Victims Unit—created an online

---

[1] *See, e.g.*, *New v. State*, 327 Ga. App. 87, 88 (755 SE2d 568) (2014).

profile of a young girl for use in his investigations of internet crimes against children. Specifically, relevant to this case, Land created a Yahoo! account with the username "roxiechick14," which included a cartoon avatar of a young female to suggest that the user was a 14-year-old girl. Land also added images to the account of a 19 or 20-year-old female employee of the police department, who looked much younger than her age, and the profile indicated that her name was "Rhonda." Next, Land used the account to log into an internet chat room designated for users located in Georgia, and he waited for other users to initiate a one-on-one chat with him. In conducting his investigation, Land used software that recorded everything occurring on his screen while he was using the roxiechick14 account.

On July 23, 2010, an individual with the username "heeeyyy_waitaminute" (the "suspect") initiated a chat with Land, who was using the roxiechick14 account, and subsequently, they had additional chats on August 16, 2010; September 20, 2010; and October 18, 2010. During the first conversation, the suspect initiated the interaction with Land by sending a message to roxiechick14 that said, "hey girl," and Land responded, "hey." Early in the conversation, the suspect asked roxiechick14 for her age, and Land responded that she was 14. And later, roxiechick14 confirmed her age again when Land responded to a question by saying, "[b]ecause I'm 14." The

2

conversation continued and eventually the suspect began asking roxiechick14 what she was wearing, including whether she was wearing a "bra and panties." The suspect also inquired into "what's the most [she had] done with a guy," and Land responded, "um, kissing and some touching, but not really." The sexual tenor of the conversation then began to escalate with the suspect asking, *inter alia*, if he could "touch [her] ass," whether she was "wet at all," whether she "wanted [him] inside where it's wet," "what size are [her] tits," and whether she wanted his "cock." After they had been messaging for a while, the suspect asked roxiechick14 whether she wanted to watch him masturbate, and he sent her an invitation to view him on a webcam. Land accepted the invitation and was then able to view the suspect's "naked penis."

Over the next few months, Land—still using the roxiechick14 account—continued to have online conversations of a sexual nature with the suspect, and on at least two occasions, the suspect "masturbat[ed] his naked, erect penis" on the webcam for the apparent 14-year-old girl to view. But Land was never able to see the suspect's face on the webcam. Eventually, Land subpoenaed Yahoo! to produce any information it had on the heeeyyy_waitaminute account, including any IP addresses used and identifying information about the user. Yahoo!'s response revealed that the suspect's account was associated with the name "Preston Patch" and

3

an address in Lawrenceville, Georgia. Next, Land requested information from Patch's internet-service provider regarding the IP address that the suspect's computer had used on the dates and times when heeeyyy_waitaminute chatted with roxiechick14, and he discovered that the IP address was accessed from 1843 Guardian Way in Lawrenceville (the "Guardian Way residence"). Land also learned that Chris Stephens, Patch's roommate, was the account holder for that address.

In addition to the foregoing investigative efforts, Land searched the police department's internal records and located Patch's driver's license, as well as a photograph of him. Then, after confirming Patch's address, Land applied for and obtained a search warrant for the Guardian Way residence. On November 18, 2010, Land executed the search warrant and seized Patch's computer. The computer was thereafter sent to the police department's computer forensics lab to be examined. And during the examination, the technician extracted files from Patch's computer containing Land's username, roxiechick14.

Thereafter, Patch was charged, via indictment, with three counts of computer or electronic pornography and child exploitation. And following a jury trial, Patch was convicted on all counts. Patch then filed a motion for a new trial, which the trial court denied after a hearing. This appeal follows.

1. On appeal, Patch first argues that the evidence was insufficient to support his convictions. We disagree.

On appeal from a criminal conviction, we view the evidence "in the light most favorable to the jury's verdict, and the defendant is no longer presumed innocent."[2] And when evaluating the sufficiency of the evidence, "we do not weigh the evidence or assess witness credibility, but only determine if the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offenses beyond a reasonable doubt."[3] Finally, the jury's verdict will be upheld so long as there is "some competent evidence, even though contradicted, to support each fact necessary to make out the State's case."[4] With these guiding principles in mind, we turn now to Patch's specific challenge to the sufficiency of the evidence to support his convictions.

In relevant part, OCGA § 16-12-100.2 (d) (1) provides:

It shall be unlawful for any person intentionally or willfully to utilize a computer wireless service or Internet service, including, but not limited

---

[2] *New*, 327 Ga. App. at 89 (punctuation omitted); *see also Jackson v. Virginia*, 443 U.S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

[3] *New*, 327 Ga. App. at 89 (punctuation omitted); *accord Goolsby v. State*, 299 Ga. App. 330, 330-31 (682 SE2d 671) (2009).

[4] *New*, 327 Ga. App. at 89 (punctuation omitted); *accord Miller v. State*, 273 Ga. 831, 832 (546 SE2d 524) (2001).

5

to, a local bulletin board service, Internet chat room, e-mail, instant messaging service, or other electronic device, to seduce, solicit, lure, or entice, or attempt to seduce, solicit, lure, or entice a child [or] another person believed by such person to be a child . . . to commit any illegal act by, with, or against a child as described in . . . Code Section 16-6-4, relating to the offense of child molestation or aggravated child molestation; Code Section 16-6-5, relating to the offense of enticing a child for indecent purposes; or Code Section 16-6-8, relating to the offense of public indecency, or to engage in any conduct that by its nature is an unlawful sexual offense against a child.

And OCGA § 16-12-100.2 (b) (1) defines "child" to mean "any person under the age of 16 years."

As to the indictment in this case, it alleged in three separate counts that Patch violated OCGA § 16-12-100.2 (d) (1) on July 23, 2010; August 16, 2010; and September 20, 2010 by

unlawfully intentionally us[ing] an internet service and an internet chat room and an electronic device, to attempt to seduce, solicit, lure and entice another person, to wit: Gwinnett County Police Officer S. J. Land, who accused believed to be a child under the age of 16, to engage in unlawful sexual conduct, contrary to the laws of said State, the peace, good order[,] and dignity thereof.

On appeal, Patch does not contend that the State failed to prove any essential element of his charged offenses, but instead, he claims that there was insufficient evidence to establish that he was the perpetrator.[5] Specifically, Patch contends that the only "visual identification evidence" was the testimony of Richard Peluso, a retired Cobb County police sergeant who investigated him in a similar case in 2008, and he argues that Peluso's in-court identification of him in this case was inadmissable.[6] Patch further asserts that, while there was evidence that his username was used in the chats with roxiechick14, no evidence established *who* was on the computer at the time of the chats, and even though "multiple people" had access to his computer, investigators never met or interviewed any of those individuals.

---

[5] Although Patch does not challenge the sufficiency of the evidence to prove each element of his offenses, we nevertheless find that the evidence was sufficient to support his convictions for computer or electronic pornography and child exploitation. *See Jackson*, 443 U.S. at 319 (III) (B); *see also Bolton v. State*, 310 Ga. App. 801, 805 (1) (714 SE2d 377) (2011) (holding that the evidence was sufficient to support a conviction for violating OCGA § 16-12-100.2 (d) (1) when the defendant used online services to solicit sex from an undercover police officer, who the defendant believed to be a 15-year-old girl); *Logan v. State*, 309 Ga. App. 95, 100 (2) (b) (709 SE2d 302) (2011) (holding that evidence was sufficient to support a conviction for violating OCGA § 16-12-100.2 (d) (1) when the defendant engaged in and initiated sexually explicit conversations with an undercover police officer posing online as a 14-year-old girl).

[6] Patch's challenge to the admissibility of Peluso's identification testimony is addressed in Division 2, *infra*.

But here, even discounting Peluso's in-court identification of Patch, there was ample evidence to support a jury finding that he was the perpetrator, including his own incriminating statements to police. It is well-settled that circumstantial evidence of identity "may be sufficient to enable a rational trier of fact to find a defendant guilty beyond a reasonable doubt."[7] Moreover, circumstantial evidence of a defendant's identity "need not exclude every *conceivable* inference or hypothesis—only those that are reasonable."[8] And importantly, to set aside the conviction, "it is not sufficient that the circumstantial evidence show that the act might by bare possibility have been done by somebody else."[9]

And here, in his pretrial interviews with Land, which were played for the jury, Patch admitted the following: (1) heeeyyy_waitaminute was his username, and he had used it for two or three years; (2) as far as he knows, no one else uses his account; (3) his roommate would not use his computer; (4) he was the person in the pictures that

---

[7] *Minor v. State*, 328 Ga. App. 128, 130-31 (1) (761 SE2d 538) (2014) (punctuation omitted); *accord Wickerson v. State*, 321 Ga. App. 844, 850 (1) (743 SE2d 509) (2013).

[8] *Minor*, 328 Ga. App. at 131 (1) (punctuation omitted); *accord Wise v. State*, 325 Ga. App. 377, 381 (2) (752 SE2d 628) (2013).

[9] *Minor*, 328 Ga. App. at 131 (1) (punctuation omitted); *accord Jordan v. State*, 320 Ga. App. 265, 269 (1) (a) (739 SE2d 743) (2013).

8

were sent to roxiechick14; (5) he masturbates on his webcam two or three times a month; and (6) he chats with females online who are as young as 15 years old. More significantly, Patch *expressly* admitted that it was "safe to say" that he was the person chatting with roxiechick14 on the relevant dates, that it was his penis shown on the webcam, and that no one else ever used his computer.

Although Patch changed his story at trial, denying that he committed the charged offenses and claiming that he was not using his computer at the relevant times, we will uphold the jury's verdict so long as there is "some competent evidence, *even though contradicted*, to support each fact necessary to make out the State's case."[10] Moreover, at trial, rather than providing a specific, reasonable explanation for why some unidentified person would have been in his house using his computer *and* his Yahoo! account to message roxiechick14 on all three occasions, Patch merely testified to general circumstances that might make such a thing possible.

Indeed, Patch testified only that he was not using his heeeyyy_waitaminute account on the relevant dates and times, he usually left his computer on when he was not at home, he did not "hide" his usernames, his computer was not password

---

[10] *New*, 327 Ga. App. at 89 (punctuation omitted) (emphasis supplied); *accord Johnson v. State*, 296 Ga. 504, 505 (1) (769 SE2d 87) (2015).

protected, and the pictures he sent to roxiechick14 were stored on his computer. However, such testimony is insufficient to reverse the jury's verdict because it does nothing more than vaguely suggest a "bare possibility" that his charged offenses may have been committed by someone else.[11] Moreover, the jury was entitled to disbelieve Patch's trial testimony and credit his pretrial statements to Land, which essentially admitted that he sent the offending messages and images to roxiechick14.[12] In sum, the circumstantial evidence that, *inter alia*, Patch's computer and Yahoo! account were used to chat with roxiechick14 from his residence, combined with his own

---

[11] *See supra* footnote 9 & accompanying text; *see also Bone v. State*, 311 Ga. App. 390, 394 (2) (715 SE2d 789) (2011) (holding that there was sufficient evidence to support a conviction for possession of methamphetamine, even when the defendant contended that it was possible that the passenger in his car or a member of the general public placed the drugs in his vicinity); *Norful v. State*, 296 Ga. App. 387, 389 (674 SE2d 633) (2009) (holding that, although circumstantial, the evidence was sufficient to support a burglary conviction and the jury was authorized to disbelieve the defendant's alternative hypothesis—that another person could have entered his apartment and hid the stolen property there—as unreasonable).

[12] *See Wright v. State*, 319 Ga. App. 723, 727 (1) (738 SE2d 310) (2013) ("[D]ecisions regarding credibility are uniquely the province of the jury, which was not required to believe the testimony of [the defendant's] witnesses, nor to disbelieve that of the [S]tate's witnesses. Where, as here, there was sufficient evidence, even though contradicted, to support each fact necessary to make out the [S]tate's case, the jury's verdicts will be upheld.") (punctuation omitted)); *McCord v. State*, 302 Ga. App. 303, 304 (690 SE2d 923) (2010) ("A jury is not required to believe a defendant's testimony, nor to disbelieve the [S]tate's witnesses." (punctuation omitted)).

incriminating statements to Land, are sufficient to support a jury finding that he was the person who committed the charged offenses.[13]

2. Next, Patch argues that the trial court erred in allowing Peluso to identify him in court as the person who Peluso saw in photographs and videos from his 2008 investigation of Patch involving a similar incident. Again, we disagree.

The State filed a pretrial notice of its intent to present evidence of a prior incident in 2008, when Patch was investigated in Cobb County for engaging in similar unlawful conduct with his heeeyyy_waitaminute account. In response, Patch filed a motion to exclude the similar-transaction evidence. The trial court then held

---

[13] *See Beaver v. State*, 330 Ga. App. 496, 498-99 (1) (767 SE2d 503) (2014) (holding that there was sufficient evidence to support convictions for exploitation of children when defendant denied downloading child pornography, but evidence suggested only that it "may have been possible" for someone else to have gained access to his computer and downloaded the illegal files); *Bolton* , 310 Ga. App. at 805 (1) (holding that the evidence was sufficient to support a conviction for violating OCGA § 16-12-100.2 (d) (1) when the defendant used online services to solicit sex from an undercover police officer, who the defendant believed to be a 15-year-old girl); *Logan*, 309 Ga. App. at 100 (2) (b) (holding that evidence was sufficient to support a conviction for violating OCGA § 16-12-100.2 (d) (1) when the defendant engaged and initiated sexually explicit conversations with an undercover police officer posing online as a 14-year-old girl); *see also Wilcox v. State*, 310 Ga. App. 382, 384 (713 SE2d 468) (2011) (explaining that "a conviction may be based on circumstantial evidence, and the proved facts need exclude only reasonable hypotheses—not bare possibilities that the crime could have been committed by someone else" (punctuation omitted)).

11

a pretrial hearing on the motion, and ultimately, it denied Patch's motion and ruled that evidence of the 2008 investigation was admissible.[14]

As to the alleged similar transaction, Peluso, who was a retired Cobb County police officer, testified during the trial about his 2008 investigation. Similarly to Land, Peluso created an online profile of a 13-year-old girl on Yahoo! with the username "LoriChase13," and he uploaded pictures of a female colleague that were taken when she was 13 years old. At some point during the investigation, LoriChase13 was contacted by Patch, who was using the username heeeyyy_waitaminute. When they began messaging, LoriChase13 informed Patch of her location and that she was 13 years old. And as with roxiechick14, Patch engaged in sexually explicit conversations with LoriChase13, sent her pictures of himself, and invited her to view him via a webcam. But unlike Land, Peluso was able to see

---

[14] Peluso's testimony regarding his 2008 investigation of Patch was admitted as evidence of prior crimes, wrongs, or acts under OCGA § 24-4-404. We note that Patch does not challenge the court's denial of his motion to suppress this evidence or argue that Peluso's testimony, as a whole, was inadmissible. Instead, he merely contends, as he did below, that Peluso's in-court identification of him was inadmissible.

12

Patch's face on the webcam, and during his testimony, he identified Patch as the individual who appeared in the pictures and on the webcam.[15]

At this point, Patch objected to Peluso's in-court identification of him, arguing that it was based on images or videos that he viewed years earlier, and never having seen Patch in person, Peluso had no ability to recognize Patch in court. In addition, Patch informed the court (and Peluso later confirmed) that the original images and videos from the 2008 case had been lost by Cobb County, and as a result, they were unavailable to show the jury. Patch further noted, and the State conceded, that Peluso initially misidentified a paralegal as Patch during a pretrial hearing in this case, before later identifying Patch as the perpetrator. Ultimately, after hearing arguments from the parties, the trial court overruled Patch's objection, noting that he could cross-examine Peluso, and the jury could decide how much weight or credit to give Peluso's identification testimony.

On cross-examination, Peluso reiterated that Patch was the individual who appeared in the photographs and webcam videos during his 2008 investigation, but he explained that those images and videos were unavailable to present to the jury

---

[15] We note that Peluso ultimately never obtained a search warrant for Patch's residence, and Patch was not interviewed or arrested as a result of the 2008 investigation.

because the hard drive used in that investigation had "crashed." Peluso further testified that, while his in-court identification of Patch was based on viewing those photographs and videos approximately seven years earlier in 2008 and 2009, he also recognized Patch from his driver's license picture.

As previously mentioned, Patch argues that Peluso's identification testimony was inadmissible because it was based on his viewing photographs and videos that were unavailable to the jury. More specifically, Patch contends that such opinion evidence is improper because it tends only to establish a fact that average jurors could decide for themselves.

As a preliminary matter, we note that because this case was tried after January 1, 2013, our new Evidence Code applies.[16] And OCGA § 24-10-1001 *et seq*, Georgia's new "best evidence rule," squarely addresses the situation at hand—*i.e.*, the admissibility of secondary evidence of the contents of a recording or photograph that has been lost or destroyed.[17] Generally, under OCGA § 24-10-1002, "[t]o prove the contents of a writing, recording, or photograph, the original writing, recording, or

[16] *See* Ga. L. 2011, pp. 99, 214, § 101 (providing that Georgia's new Evidence Code applies "to any motion made or hearing or trial commenced on or after" January 1, 2013).

[17] *See* OCGA § 24-10-1004 (1).

photograph shall be required."[18] However, OCGA § 24-10-1004 outlines several exceptions to this general rule. In relevant part, OCGA § 24-10-1004 provides that "[t]he original shall *not* be required and other evidence of the contents of a writing, recording, or photograph *shall be admissible* if . . . [a]ll originals are lost or have been destroyed, unless the proponent lost or destroyed them in bad faith."[19]

Here, it is undisputed that the State sought to present "other evidence" (*i.e.*, Peluso's testimony) of the contents of video recordings and photographs that had been destroyed when a hard drive used in the 2008 investigation of Patch malfunctioned. Nevertheless, neither party has addressed (either below or on appeal)

---

[18] We note that, unlike OCGA § 24-10-1002, former OCGA § 24-5-4, Georgia's prior best evidence rule, applied only to writings and would have been inapplicable to the photographs and video recordings at issue here. *See* former OCGA § 24-5-4; *Perkins v. State*, 260 Ga. 292, 295 (7) (392 SE2d 872) (1990) ("The best evidence rule applies only to writings."); *see also* OCGA § 24-10-1002 ("To prove the contents of a writing, *recording, or photograph*, the original writing, recording, or photograph shall be required. (emphasis supplied)); *Hooks v. State*, 295 Ga. 835, 839 (3) n.4 (764 SE2d 409) (2014) ("The former best evidence rule was superseded in the new Evidence Code by the provisions of OCGA § 24-10-1001 et seq.").

[19] OCGA § 24-10-1004 (1) (emphasis supplied); *see also* Ronald L. Carlson and Michael Scott Carlson, Carlson on Evidence, p. 800 (4th ed. 2016) ("Once an adequate excuse is established for nonproduction of the original, the federal rule recognizes no degrees of secondary evidence[,] and [s]ome courts take a broad view of the sort of secondary evidence which may be used.") (punctuation and citation omitted).

whether Peluso's testimony was admissible under OCGA § 24-10-1004.[20] Instead, both parties rely exclusively on Georgia cases published *before* the enactment of the new Evidence Code.[21] And furthermore, the cases relied upon by the parties—in addition to being decisions decided under Georgia's prior Evidence Code—are readily distinguishable from the instant case because they all address situations

---

[20] Our Supreme Court has emphasized that, when a provision of the new Evidence Code has been adopted from the Federal Rules of Evidence, we must consider the meaning of that provision by looking to "the decisions of the federal appeals courts construing and applying the federal rules, especially the decisions of the Eleventh Circuit." *Frost v. State*, 297 Ga. 296, 299 (773 SE2d 700) (2015).

[21] Even though Georgia's state judicial system is now in its fourth year under the new Evidence Code, many parties continue to argue evidentiary issues in cases tried after January 1, 2013, without any reference to this code or acknowledgment of the substantially altered jurisprudential landscape. We take this opportunity to remind our highly capable trial courts and lawyers of the importance of relying upon the new Evidence Code, as well as its accompanying case law, in addressing evidentiary issues arising after the new code's effective date. *See Stratacos v. State*, 293 Ga. 401, 408 (2) (b) n.10 (748 SE2d 828) (2013) ("[I]t is always risky for courts to rely on a precedent interpreting a statute or other legal text without first examining whether the legal text on which the precedent was based has been revised and then considering the effect of any such change . . . . And we add that courts relying on old precedents regarding evidentiary issues should be particularly attuned to this risk in light of Georgia's new Evidence Code.").

where, unlike this case, the photograph or video at issue *was* available at trial and

viewed by the jury.[22]

Nevertheless, even though Patch did not specifically object to Peluso's

identification testimony based on our new best-evidence rule in the trial court,

Georgia's new Evidence Code permits a court to take notice of "plain errors affecting

---

[22] *See Owens v. State*, 317 Ga. App. 821, 824 (1) (733 SE2d 16) (2012) (holding that identification testimony regarding a video or photograph that was viewed by the jury "should be admitted for the jury's consideration only if there is some basis for concluding that the witness is more likely to correctly identify the defendant from the video or photograph than is the jury, as when the witness is familiar with the defendant's appearance around the time a surveillance [video or] photograph was taken and the defendant's appearance has changed prior to trial, or when the witness knows about some other distinctive but presently inaccessible characteristic of the defendant's appearance" (punctuation omitted)); *Grimes v. State*, 291 Ga. App. 585, 590-91 (2) (662 SE2d 346) (2008) (same); *Mitchell v. State*, 283 Ga. App. 456, 458-59 (641 SE2d 674) (2007) (same); *see also Wadlington v. State*, 302 Ga. App. 559, 561 (1) (692 SE2d 28) (2010) ("[I]t is well-established that a witness cannot identify a person depicted in a video as being the defendant if it is within the ability of the jurors to decide this issue for themselves."). Because the foregoing cases are inapposite to the issue before us, it is not necessary for us to consider whether they have any continuing precedential utility or validity following the enactment of the new Evidence Code. But as the Magic 8 Ball often notes, "Outlook Not So Good." *See* OCGA § 24-7-701 (a); *see also Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 588 (II) (A) (113 SCt 2786, 125 LEd2d 469) (1993) (noting the forgiving thrust of the federal rules of evidence and their "general approach of relaxing the traditional barriers to opinion testimony") (punctuation and citation omitted); Ronald L. Carlson and Michael Scott Carlson, Carlson on Evidence, p. 417 (4th ed. 2016) ("Federal Evidence Rule 701, newly embraced in Georgia as part of the 2013 evidence code, permits a wide range of opinions by lay witnesses.").

substantial rights although such errors were not brought to the attention of the [trial] court.."[23] And in this regard, the Supreme Court of Georgia has adopted the federal plain error standard of review, as articulated by the Supreme Court of the United States in *Pucket v. United States.*[24] Under this four-pronged test,

> there [first] must be an error or defect—some sort of deviation from a legal rule—that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the appellant. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it affected the outcome of the trial court proceedings. Fourth and finally, if the above three prongs are satisfied, the appellate court has the discretion to remedy the error—discretion which ought to be exercised only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings.[25]

---

[23] OCGA § 24-1-103 (d); *see Gates v. State*, 298 Ga. 324, 326 (3) (781 SE2d 772) (2016) (explaining that, under the new Evidence Code, evidentiary rulings are subject to plain-error review when a defendant did not object to such rulings at trial).

[24] 556 U.S. 129 (129 SCt 1423, 173 LE2d 266) (2009); *see Gates*, 298 Ga. at 326 (3) (noting that the Supreme Court of Georgia has adopted the four-pronged plain-error standard as set forth in *Puckett*).

[25] *Gates*, 298 Ga. at 326 (3) (punctuation omitted), *quoting State v. Kelly*, 290 Ga. 29, 33 (2) (a) (718 SE2d 232) (2011); *see Puckett*, 556 U.S. at 135 (II).

In the case *sub judice*, Patch cannot satisfy the foregoing test to establish that the trial court plainly erred in admitting Peluso's testimony under OCGA § 24-10-1004.[26] Specifically, as to the first and second prongs of the plain-error analysis, Patch is unable to show that the trial court erred in admitting this evidence under the new Evidence Code, much less that a legal error was "clear or obvious, rather than subject to reasonable dispute."[27] Indeed, as previously noted, under OCGA § 24-10-1004 (1), an original recording or photograph is *not* required at trial and secondary evidence of its contents *is admissible* if "[a]ll originals are lost or have been destroyed, unless the proponent lost or destroyed them in bad faith." And here, it is undisputed that the relevant videos and photographs were destroyed when the hard drive used in Peluso's 2008 investigation "crashed." Moreover, there is no evidence (and Patch has not even alleged) that the State intentionally destroyed the videos and

---

[26] We reiterate that Patch does not argue on appeal that the trial court erred in admitting Peluso's testimony under OCGA § 24-10-1004, and we note that it is *his burden* to show plain error. *See Howell v. State*, 330 Ga. App. 668, 673 (2) (769 SE2d 98) (2015) ("In order to reverse on the basis of plain error in this case, [the defendant] must satisfy the burden of establishing all of the following elements: that the charge (or the failure to charge) was erroneous; that the error was obvious; and that the error likely affected the outcome of his trial."). Nevertheless, we exercise the discretion afforded us by OCGA § 24-1-103 (d) to review the trial court's evidentiary ruling for plain error. *See supra* note 23 & accompanying text.

[27] *Gates*, 298 Ga. at 326 (3) (punctuation omitted).

photographs in bad faith. As a result, Peluso's testimony regarding the contents of the lost or destroyed photographs and video recordings was admissible under the plain language of OCGA § 24-10-1004 (1).[28]

Finally, even assuming, *arguendo*, that Patch could satisfy the first two prongs of the plain-error test, he cannot comply with its third requirement of showing that the trial court's admission of Peluso's identification testimony affected the outcome of the trial because the evidence of Patch's guilt in this case was overwhelming. Indeed, in addition to the circumstantial evidence that Patch's Yahoo! account was used on his computer from his residence to message Land, Patch essentially confessed to the charged offenses in two separate interviews with law enforcement. Specifically, as previously noted, Patch admitted that (1) he had been using the

---

[28] OCGA § 24-10-1004 (1); *see United States v. Flanders*, 752 F3d 1317, 1336 (V) (11th Cir. 2014) (holding that a transcript of an audio recording of a defendant's statement was admissible when the recording had been inadvertently destroyed and there was no evidence of bad faith); *United States v. Ross*, 33 F3d 1507, 1513 (II) (A) (11th Cir. 1994) ("Once the terms of Rule 1004 are satisfied, the party seeking to prove the contents of the recording—here, the government—may do so by *any kind of secondary evidence*." (emphasis supplied)); *see also United States v. McKenzie*, 505 F. App'x 843, 846 (11th Cir. 2013) (holding that the best-evidence rule did not bar a police officer's identification testimony that was based on his monitoring of a live video feed that was unavailable to the jury); *United States v. Dadamuratov*, 340 F. App'x 540, 547 (II) (B) (11th Cir. 2009) (holding that a transcript of destroyed recordings was admissible under OCGA § 24-10-1004 (1) when the destruction of the recordings was accidental and not in bad faith).

heeeyyy_waitaminute account for two or three years; (2) he did not know of anyone else who would use that account; and (3) his penis was depicted on the images that Land collected during his investigation. And ultimately, Patch agreed that it was "safe to say" he was the individual who was having the sexually explicit conversations with roxiechick14 on the relevant dates and times. In light of this overwhelming evidence of Patch's guilt, including his own incriminating statements, any error in allowing Peluso to identify Patch as the perpetrator in his 2008 investigation did not affect Patch's substantial rights, which in the ordinary case means that it affected the outcome of the trial court proceedings.[29]

---

[29] *See United States v. Gamory*, 635 F3d 480, 494-95 (B) (11th Cir. 2011) (noting that the plain error "prejudice inquiry" (prong three) is similar to the harmless-error analysis and holding that, in light of the overwhelming evidence of the defendant's guilt, he could not show that the judgment was "substantially swayed by the error"); *United States v. Turner*, 474 F3d 1265, 1278 (III) (11th Cir. 2007) (holding that the appellant failed to satisfy the third prong of the plain-error analysis when "independent of the challenged testimony, the government presented overwhelming evidence in support of [his] convictions"); *see also Carter v. State*, 326 Ga. App. 144, 149 (3) (756 SE2d 232) (2014) (holding that the trial court's error in allowing a detective to identify the defendant in surveillance footage that was also available to the jury was harmless in light of the overwhelming evidence of his guilt, including, *inter alia*, that the clothing recovered by police matched the items worn by the defendant in the video and that the defendant's cell phone records (similarly to records of Patch's internet use) placed him in the area of the robbery at the time when it occurred); *Rogers v. State*, 294 Ga. App. 195, 198-99 (3) (670 SE2d 106) (2008) (holding that trial court's error in allowing a law-enforcement officer to identify the defendant on a videotape that was available to the jury was harmless in light of the

Nevertheless, Patch contends that the alleged erroneous admission of Peluso's identification testimony was prejudicial because Land never saw Patch's face on the webcam during the instant investigation, and Peluso previously misidentified a paralegal as the perpetrator. In addition, Patch points out that he denied ever having chatted with "underage girls" at trial, and that he presented numerous character witnesses. What Patch apparently fails to appreciate, however, is that this evidence was presented to the jury, and it was for the jury to decide the credibility of the witnesses, as well as the weight given to their testimony.[30]

For all of the foregoing reasons, we affirm Patch's convictions.

*Judgment affirmed. Phipps, P. J., and Peterson, J., concur.*

---

overwhelming evidence of his guilt, including that the he identified himself and his co-defendant in the same videotape).

[30] *See supra* footnotes 3 & 12 and accompanying text.